** FILED **  Env: 13796676
McHenry County, Illinois
21LA000162
Date: 6/23/2021 2:55 PM
Katherine M. Keefe
Clerk of the Circuit Court

## IN THE CIRCUIT COURT OF THE 22nd JUDICIAL CIRCUIT
## McHENRY DEPARTMENT, LAW DIVISION

DANA HARPER

      Plaintiff,

      v.

CENTRAL WIRE INDUSTRIES LTD; CWI
HOLDING INC.; LINCOLN ELECTRIC
HOLDINGS, INC.; USI HOLDING, INC.;
ARCELORMITTAL INTERNATIONAL
AMERICA, LLC; ARCELORMITTAL USA
FOUNDATION INC.; CLEVELAND-CLIFFS
STEEL, LLC; GERRY ROUP; HENRY
LOPES; RICHARD PERLICK; RICHARD
GUSTAFSON; MIKE GRUNTHANER;
DAVID PLECNER; VICTOR POLARD;
CARL REED; TERRY TAMINAUSKSAS;
TOM HANEWALD; THIERY CREMAILH;
GUNNAR K. GILBERG; JEAN-CLAUDE
COUASNON; JACK ZUHARICH; VIKING
CHEMICAL COMPANY; WESTON
SOLUTIONS, INC.; MATRIX
ENVIRONMENTAL, INCORPORDATED;
AUTMNWOOD ESH CONSULTANTS,
LLC; ANTEA USA, INC.; JOHN W.
THORSEN; NORTEK GLOBAL HVAC,
LLC; BROAN-NUTONE, LLC; RANGAIRE
MANUFACTURING COMPANY, LP; and
MELROSE INDUSTRIES PLC,

      Defendants.

Case No.: **21LA000162**

**PLAINTIFF DEMANDS A JURY TRIAL**

> **NOTICE**
>
> THIS CASE IS HEREBY SET FOR A SCHEDULING CONFERENCE IN COURTROOM _TBD_ ON _09-22-2021_ _TBD_, AT _TBD_. FAILURE TO APPEAR MAY RESULT IN THE CASE BEING DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED.

## COMPLAINT AT LAW

NOW COMES the Plaintiff DANA HARPER, by and through her attorneys,

ROMANUCCI & BLANDIN, LLC, and complaining against the Defendants, CENTRAL WIRE

1

INDUSTRIES LTD; CWI HOLDING INC.; LINCOLN ELECTRIC HOLDINGS, INC.; USI

HOLDING, INC.; ARCELORMITTAL INTERNATIONAL AMERICA, LLC;

ARCELORMITTAL USA FOUNDATION INC.; CLEVELAND-CLIFFS STEEL, LLC;

GERRY ROUP; HENRY LOPES; RICHARD PERLICK; RICHARD GUSTAFSON; MIKE

GRUNTHANER; DAVID PLECNER; VICTOR POLARD; CARL REED; TERRY

TAMINAUSKSAS; TOM HANDWALD; THIERY CREMAILH; GUNNAR K. GILBERG;

JEAN-CLAUDE COUASNON; VIKING CHEMICAL COMPANY; WESTON SOLUTIONS,

INC.; MATRIX ENVIRONMENTAL, INCORPORDATED; AUTUMNWOOD ESH

CONSULTANTS, LLC; ANTEA USA, INC.; JOHN W. THORSEN; NORTEK GLOBAL

HVAC, LLC; BROAN-NUTONE, LLC; RANGAIRE MANUFACTURING COMPANY, LP;

Melrose Industries PLC;: pleading hypothetically and in the alternative, states as follows:

**A.  Plaintiff, Dana Harper**

1.      Plaintiff Dana Harper is a forty-six (46) year-old female, born in 1974.

2.      Ms. Harper was raised at 17317 E. Johnson Street, Union, Illinois, where she lived

for twenty (20) years from 1974-1994; and lived again in Union for six (6) more years from 1996-

2002.

3.      Ms. Harper returned to Union between 1994 and 1996, and 2002 to 2020 to visit

her family.

**B.  Defendant, Central Wire Industries LTD**

4.      Defendant, Central Wire Industries LTD ("Central Wire Industries") is a Canadian

Corporation, with its principal place of business at 1 North Street, Perth, Ontario K7H 2S2.

5.      Defendant, Central Wire Industries presently operates a plant at 6509 Olson Road,

Union, Illinois, 60180.

2

**C.  Defendant, CWI Holding Inc.**

6.      Defendant, CWI Holding Inc. ("CWI Holding"), is a Delaware Corporation, with its principal place of business at 1 North Street, Perth, Ontario K7H 2S2.

7.      Defendant, CWI Holding presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**D.  Defendant, Lincoln Electric Holdings, Inc.**

8.       Defendant, Lincoln Electric Holdings, Inc., is a Ohio Corporation with its principal place of business at 4400 Easton Commons Way, Columbus, Ohio.

9.      Defendant, Lincoln Electric Holdings, Inc., presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**E.      Defendant, USI Holding, Inc.**

10.      Defendant, USI Holding, Inc., is a Nevada Corporation with its principal place of business at 202 N. Carson St., Carson City, NV, 89701.

11.      Defendant, USI Holding, Inc., presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**F.  Defendant, Arcelormittal International America, LLC**

12.      Defendant, Arcelormittal International America, LLC, is a Delaware Corporation, with its principal place of business at One South Dearborn, Chicago, Illinois.

13.      Defendant, Arcelormittal International America, LLC, presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**G.      Defendant, Arcelormittal USA Foundation, Inc.**

14.      Defendant, Arcelormittal USA Foundation, Inc., is a Delaware Corporation, with its principal place of business at One South Dearborn, Chicago, Illinois.

3

15.     Defendant, Arcelormittal USA Foundation, Inc., presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**H.     Defendant, Cleveland-Cliffs Steel, LLC**

16.     Defendant, Cleveland-Cliffs Steel, LLC, is a Delaware Corporation, with its principal place of business at One South Dearborn, Chicago, Illinois.

17.     Defendant, Cleveland-Cliffs Steel, LLC, presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**I.     Defendant, Gerry Roup**

18.      Defendant, Gerry Roup was the General Manager of Techalloy and Central Wire at the Union plant from 2005 through 2020.

19.      Defendant, Gerry Roup, currently resides in McHenry County, Illinois.

20.     To plaintiff's best knowledge and belief, Defendant, Gerry Roup, currently resides at 811 S. Vista Drive, Algonquin, Illinois.

**J.     Defendant, Henry Lopes**

21.     Defendant, Henry Lopes was Vice President of U.S. Operations for Techalloy and Central Wire at the Union, IL, plant. From 1985 to 2014.

22.     Defendant, Henry Lopes currently resides in Collier County, Florida.

23.     To plaintiff's best knowledge and belief, Defendant, Henry Lopes, currently resides at 4005 Gulf Shore Blvd N, Unit 1402, Naples, FL 34103.

**K.     Defendant, Richard Perlick**

24.     Defendant, Richard Perlick was the General Manager of the Techalloy and Central Wire Plant in Union, IL, from 1990 to 1997.

25.     Defendant, Richard Perlick currently resides in McHenry County, Illinois.

4

26.     To plaintiff's best knowledge and belief, Defendant, Richard Perlick, currently resides at 1758 Woodhaven Drive, Crystal Lake, IL, 60014.

**L.     Defendant, Richard Gustafson**

27.     Defendant, Richard Gustafson was the production manager at the Techalloy and Central Wire Plant in Union, IL, from 2006 through 2020.

28.     Defendant, Richard Gustafson currently resides in Winnebago County.

29.     To plaintiff's best knowledge and belief, Defendant, Richard Gustafson, currently resides at 1188 Cerasus Drive, Rockford, IL 61108.

**M.     Defendant, Mike Grunthaner**

30.     Defendant, Mike Grunthaner was the production manager of Techalloy and Central Wire at the Union, IL, Plant from 1990 through 2006.

31.     Defendant, Mike Grunthaner currently resides in McHenry County, Illinois.

32.     To plaintiff's best knowledge and belief, Defendant, Mike Grunthaner, currently resides at 3972 Honeymoon Ridge, Lake in the Hills, IL 60156.

**N.     Defendant, David Plencner**

33.     Defendant, David Plencner was an employee of Techalloy and Central Wire at the Union Plant from 1962 through 2010.

34.     Defendant, David Plencner currently resides in McHenry County.

35.     To plaintiff's best knowledge and belief, Defendant, David Plencner, currently resides at 27704 Church Road, Marengo, IL, 60152.

**O.     Defendant, Victor Polard**

36.     Defendant, Victor Polard was the Vice President of Arcelor from 2002 to 2006.

37.     Defendant, Victor Polard currently resides in France.

5

38. To plaintiff's best knowledge and belief, Defendant, Victor Polard, currently resides at 36, route de Saint-Roch 13520, Le Paradou, France.

**P.**  **Defendant, Carl Reed**

39. Defendant, Carl Reed was the VP of Human Resources and Corporate Safety Officer of Techalloy and Central Wire at the Union plant from 1986-2003.

40. Defendant, Carl Reed currently resides in Harris County, Texas.

41. To plaintiff's best knowledge and belief, Defendant, Carl Reed, currently resides at 11823 Silverwood Bend Lane, Cypress, TX, 77433.

**Q.**  **Defendant, Terry Tamanauskas**

42. Defendant, Terry Tamanauskas was employed at the Techalloy and Central Wire Plant in Union, IL, from 2000 until the present date.

43. Defendant, Terry Tamanauskas, became General Manager (GM) of the Union, Illinois, Plant, in 2020.

44. Defendant, Terry Tamanauskas currently resides in Winnebago County, IL.

45. To plaintiff's best knowledge and belief, Defendant, Terry Tamanauskas, currently resides at 6018 Sweet Grass Drive, Roscoe, IL 61073.

**R.**  **Defendant, Tom Hanewald**

46. Defendant, Tom Hanewald was the Vice President/Chief Administrative Officer for Techalloy and Central Wire at the Union Plant from 2015 through 2018.

47. Defendant, Tom Hanewald currently resides in Allen County, IN

48. To plaintiff's best knowledge and belief, Defendant, Tom Hanewald, currently resides at 6122 Aboit CV, Fort Wayne, IL 46814.

**S.**  **Defendant, Thiery Cremailh**

6

49.     Defendant, Thiery Cremailh was the President and CEO of Techalloy and Central Wire from 1990 to 2007.

50.     Defendant, Thiery Cremailh currently resides in Bergen County, NJ.

51.     To plaintiff's best knowledge and belief, Defendant, Thiery Cremailh, currently resides at 14 Seminary Drive, Mahwah, NJ 07430.

**T.     Defendant, Gunnar K. Gilberg**

52.     Defendant, Gunnar K. Gilberg was a principal of Techalloy's Operations from 1990 through 2008.

53.     Defendant, Gunnar K. Gilberg, currently resides in the United Kingdom.

54.     To plaintiff's best knowledge and belief, Defendant, Gunnar K. Gilberg, currently resides at 1 Eaton Square, London SW1W 9DA.

**U.     Defendant, Jean-Claude Couasnon**

55.     Defendant, Jean-Claude Couasnon was Vice President of ArcelorMittal International America, LLC from 2004 to 2006.

56.     Defendant, Jean-Claude Couasnon currently resides abroad, in France.

57.     To plaintiff's best knowledge and belief, Defendant, Jean-Claude Couasnon, currently resides at 6, square de Tocqueville 78150, Le Chesnay, France.

**V.     Defendant, Jack Zuharich**

58.     Defendant, Jack Zuharich, was President and CEO of Techalloy from 1987 to the late 1980s and or early 1990s.

59.     Defendant, Jack Zuharich currently resides in Fairfield County, CT.

60.     To plaintiff's best knowledge and belief, Defendant, Jack Zuharich, currently resides at 10 Abbotts Hill Road, Newtown, CT 06470.

7

**W.**     **Defendant Viking Chemical Company**

61.     Defendant, Viking Chemical Company, is an Illinois Corporation with its principal place of business at 1827 18th Ave., Rockford, IL, 61110.

62.     Defendant, Viking Chemical Company, presently operates a chemical distribution warehouse.

**X.**     **Defendant, Weston Solutions, Inc.**

63.     Defendant, Weston Solutions, Inc., is a Pennsylvania Corporation with its principal place of business at 1400 Weston Way, West Chester, PA 19380.

64.     Defendant, Weston Solutions, Inc. is an environmental remediation company.

**Y.**     **Defendant, Matrix Environmental, Inc.**

65.     Defendant, Matrix Environmental, Inc., is a California Corporation with its principal place of business at 2330 Cherry Industrial Cir., Long Beach, CA 90805.

66.     Defendant, Matrix Environmental, Incorporated., is an environmental remediation company.

**Z.**     **Defendant, Autumnwood ESH Consultants, LLC**

67.     Defendant, Autumnwood ESH Consultants, LLC, is a Wisconsin Corporation with its principal place of business at 6539 Autumnwood Ct., Mount Pleasant, WI 53403.

68.     Defendant, Autumnwood ESH Consultants, LLC, is an environmental remediation company.

**AA.**     **Defendant, Antea USA, Inc.**

69.     Defendant, Antea USA, Inc., is a Minnesota Corporation with its principal place of business at 2345 Rice Street, Suite 230, Roseville, MN 55113.

70.     Defendant, Antea USA, Inc., is an environmental remediation company.

8

**BB.**    **Defendant, John W. Thorsen**

71.    Defendant, John W. Thorsen was a Senior Vice President at Weston Solutions, Inc., from 1981 to 2003.

72.    Defendant, John W. Thorsen was an Engineering Manager at Matrix Environmental, Inc., from 2005 to 2011.

73.    Defendant, John W. Thorsen is a Principal at Autumnwood ESH Consultants, LLC, from 2011 to the Present.

74.    Defendant John W. Thorsen currently resides in Racine County, WI.

75.    To plaintiff's best knowledge and belief, Defendant, John W. Thorsen, currently resides at 6539 Autumnwood Ct, Mount Pleasant, WI 53403.

**CC.**    **Defendant, Nortek Global HVAC, LLC**

76.    Defendant, Nortek Global HVAC, LLC, is a Missouri Corporation with its principal place of business at 221 Bolivar St, Jefferson City, MI, 65101.

**DD.**    **Defendant, Broan-NuTone LLC**

77.    Defendant, Broan-NuTone LLC, is a Delaware Corporation with its principal place of business at 926 W State St. Hartford, WI 53027.

**EE.**    **Defendant, Rangaire Manufacturing Company, LP**

78.    Defendant, Rangaire Manufacturing Company, LP, is a Texas Corporation with its principal place of business at 501 S Wilhite St., Cleburne, TX 76031.

**FF.**    **Defendant, Melrose Industries PLC**

79.    Defendant, Melrose Industries PLC, is a foreign Corporation with its principal place of business at 11th Floor, The Colmore Building, 20 Colmore Circus Queensway, Birmingham, West Midlands, B4 6AT, England.

9

## VENUE

80.     Venue is proper in this Court pursuant to 735 ILCS 5/2 – 101 and 5/2 – 102.

81.     The emissions of VOCs and allegations underlying the basis of this suit occurred in the Town of Union, IL; McHenry County, IL.

## ALLEGATIONS COMMON TO ALL COUNTS

82.     In 1916 Trichloroethene ("TCE") was documented to have adverse health impacts on the US beef industry.

83.     In 1916 literature was published citing TCE as a carcinogen.

84.     In 1916, TCE was found to have adverse impacts on animals.

85.     In 1923, TCE was cited as a cause of human death.

86.     In 1923, it was known to various manufacturing companies, TCE had adverse health impacts on workers.

87.     In 1932, the Journal of American Medical Association published health risks of TCE.

88.     In 1932, the Journal of American Medical Association published this to manufacturing industries.

89.     In 1932, Chrysler Corp. advised its workers of a method in which TCE should not be used in the manufacturing process.

90.     In 1932, the American Medical Association advised manufacturing companies to stop using TCE or, "it would be the source of disaster for exposed workmen."

91.     In 1952, the farming industry stopped using TCE in cattle feeding products.

92.     In 1975, the National Cancer Institute published literature that TCE caused cancerous tumor growth in mice.

10

93.     In 1976, the United States Environmental Protection Agency added TCE to its, "Hazardous Substance List."

94.     In 1976, the U.S. EPA issued a press release warning of, "the contamination of groundwater by TCE, leading from disposal sites as a primary concern."

95.     In 1977, the Food & Drug Administration banned TCE

96.     In May 1998, the EPA ordered Techalloy to, "institute controls consisting of a facility deed restriction and a country restriction on water well drilling permits," as a corrective action.

97.     In May 1998, the EPA ordered Techalloy to institute a private well sampling program as a corrective action.

98.     In May 1998, the EPA ordered Techalloy to institute a soil stabilization program to address areas of metal contamination at the site as a corrective action.

99.     In May 1998, the EPA ordered Techalloy to institute to institute a continual operation of the off-site groundwater recovery system as a correctives action.

100.     In May 1998, the EPA ordered Techalloy to institute an implementation of an air sparge/soil vapor extraction system to treat on-site soils and groundwater contaminated in VOCs as a corrective action.

101.     In May 1998, the EPA ordered Techalloy to continue to institute groundwater monitoring as a corrective action

102.     In March 1999, Techalloy installed a second extraction well in order to increase the size of the capture zone of VOCs, including TCE.

103.     In 1960, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

11

104.     In 1960, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

105.     In 1960, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

106.     In 1960, Techalloy operated the property at 6509 Olson Rd, Union, IL.

107.     In 1960, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

108.     In 1960, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

109.     In 1960, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

110.     In 1960, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

111.     In 1960, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

112.     In 1960, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

113.     In 1960, Techalloy purchased TCE for use at the plant.

114.     In 1960, Techalloy purchased TCA for use at the plant.

115.     In 1960, Techalloy purchased PCE for use at the plant.

116.     In 1960, Techalloy purchased DCE for use at the plant.

117.     In 1960, Techalloy purchased DCA for use at the plant.

118.     In 1960, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

119.     In 1960, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

120.     In 1960, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

12

121.  In 1960, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

122.  In 1960, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

123.  In 1960, Techalloy disposed of TCE used at the plant.

124.  In 1960, Techalloy was in control of disposing TCA at the plant.

125.  In 1960, Techalloy was in control of disposing PCE at the plant.

126.  In 1960, Techalloy was in control of disposing DCE at the plant.

127.  In 1960, Techalloy was in control of disposing DCA at the plant.

128.  In 1960, Techalloy designed an outdoor, concrete evaporation pad for TCE

129.  In 1960, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

130.  In 1960, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

131.  In 1960, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

132.  In 1960, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

133.  In 1960, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

134.  That in 1960, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

135.  That in 1960, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

13

136.    That in 1960, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

137.    That in 1960, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

138.    That in 1960, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

139.    That in 1960, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

140.    That in 1960, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

141.    That in 1960, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

142.    That in 1960, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

143.    That in 1960, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

144.    That in 1960, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

145.    That in 1960, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

146.    That in 1960, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

14

147.     That in 1960, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

148.     That in 1960, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

149.     That in 1960, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

150.     That in 1960, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

151.     That in 1960, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

152.     That in 1960, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

153.     That in 1960, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

154.     That in 1960, TCE from the plant entered the air in Union, IL.

155.     That in 1960, TCA from the plant entered the air in Union, IL.

156.     That in 1960, DCE from the plant entered the air in Union, IL.

157.     That in 1960, DCA from the plant entered the air in Union, IL.

158.     That in 1960, PCE from the plant entered the air in Union, IL.

159.     That in 1960, TCE from the plant entered the Harper residence basement.

160.     That in 1960, TCE from the plant entered the Harper residence crawl spaces.

161.     That in 1960, TCE from the plant entered the Harper residence home.

162.     That in 1960, TCA from the plant entered the Harper residence basement.

15

163.	That in 1960, TCA from the plant entered the Harper residence crawl spaces.

164.	That in 1960, TCA from the plant entered the Harper residence home.

165.	That in 1960, DCE from the plant entered the Harper residence basement.

166.	That in 1960, DCE from the plant entered the Harper residence crawl spaces.

167.	That in 1960, DCE from the plant entered the Harper residence home.

168.	That in 1960, DCA from the plant entered the Harper residence basement.

169.	That in 1960, DCA from the plant entered the Harper residence crawl spaces.

170.	That in 1960, DCA from the plant entered the Harper residence home.

171.	That in 1960, PCE from the plant entered the Harper residence basement.

172.	That in 1960, PCE from the plant entered the Harper residence crawl spaces.

173.	That in 1960, PCE from the plant entered the Harper residence home.

174.	In 1961, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

175.	In 1961, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

176.	In 1961, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

177.	In 1961, Techalloy operated the property at 6509 Olson Rd, Union, IL.

178.	In 1961, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

179.	In 1961, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

180.	In 1961, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

181.	In 1961, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

16

182. In 1961, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

183. In 1961, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

184. In 1961, Techalloy purchased TCE for use at the plant.

185. In 1961, Techalloy purchased TCA for use at the plant.

186. In 1961, Techalloy purchased PCE for use at the plant.

187. In 1961, Techalloy purchased DCE for use at the plant.

188. In 1961, Techalloy purchased DCA for use at the plant.

189. In 1961, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

190. In 1961, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

191. In 1961, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

192. In 1961, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

193. In 1961, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

194. In 1961, Techalloy disposed of TCE used at the plant.

195. In 1961, Techalloy was in control of disposing TCA at the plant.

196. In 1961, Techalloy was in control of disposing PCE at the plant.

197. In 1961, Techalloy was in control of disposing DCE at the plant.

198. In 1961, Techalloy was in control of disposing DCA at the plant.

199. In 1961, Techalloy designed an outdoor, concrete evaporation pad for TCE.

200. In 1961, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

17

201.    In 1961, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

202.    In 1961, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

203.    In 1961, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

204.    In 1961, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

205.    That in 1961, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

206.    That in 1961, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

207.    That in 1961, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

208.    That in 1961, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

209.    That in 1961, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

210.    That in 1961, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

211.    That in 1961, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

18

212.    That in 1961, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

213.    That in 1961, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

214.    That in 1961, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

215.    That in 1961, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

216.    That in 1961, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

217.    That in 1961, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

218.    That in 1961, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

219.    That in 1961, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

220.    That in 1961, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

221.    That in 1961, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

222.    That in 1961, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

19

223.    That in 1961, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

224.    That in 1961, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

225.    That in 1961, TCE from the plant entered the air in Union, IL.

226.    That in 1961, TCA from the plant entered the air in Union, IL.

227.    That in 1961, DCE from the plant entered the air in Union, IL.

228.    That in 1961, DCA from the plant entered the air in Union, IL.

229.    That in 1961, PCE from the plant entered the air in Union, IL.

230.    That in 1961, TCE from the plant entered the Harper residence basement.

231.    That in 1961, TCE from the plant entered the Harper residence crawl spaces.

232.    That in 1961, TCE from the plant entered the Harper residence home.

233.    That in 1961, TCA from the plant entered the Harper residence basement.

234.    That in 1961, TCA from the plant entered the Harper residence crawl spaces.

235.    That in 1961, TCA from the plant entered the Harper residence home.

236.    That in 1961, DCE from the plant entered the Harper residence basement.

237.    That in 1961, DCE from the plant entered the Harper residence crawl spaces.

238.    That in 1961, DCE from the plant entered the Harper residence home.

239.    That in 1961, DCA from the plant entered the Harper residence basement.

240.    That in 1961, DCA from the plant entered the Harper residence crawl spaces.

241.    That in 1961, DCA from the plant entered the Harper residence home.

242.    That in 1961, PCE from the plant entered the Harper residence basement.

243.    That in 1961, PCE from the plant entered the Harper residence crawl spaces.

20

244.    That in 1961, PCE from the plant entered the Harper residence home.

245.    In 1962, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

246.    In 1962, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

247.    In 1962, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

248.    In 1962, Techalloy operated the property at 6509 Olson Rd, Union, IL.

249.    In 1962, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

250.    In 1962, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

251.    In 1962, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

252.    In 1962, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

253.    In 1962, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

254.    In 1962, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

255.    In 1962, Techalloy purchased TCE for use at the plant.

256.    In 1962, Techalloy purchased TCA for use at the plant.

257.    In 1962, Techalloy purchased PCE for use at the plant.

258.    In 1962, Techalloy purchased DCE for use at the plant.

259.    In 1962, Techalloy purchased DCA for use at the plant.

21

260.    In 1962, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

261.    In 1962, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

262.    In 1962, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

263.    In 1962, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

264.    In 1962, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

265.    In 1962, Techalloy disposed of TCE used at the plant.

266.    In 1962, Techalloy was in control of disposing TCA at the plant.

267.    In 1962, Techalloy was in control of disposing PCE at the plant.

268.    In 1962, Techalloy was in control of disposing DCE at the plant.

269.    In 1962, Techalloy was in control of disposing DCA at the plant.

270.    In 1962, Techalloy designed an outdoor, concrete evaporation pad for TCE

271.    In 1962, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

272.    In 1962, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

273.    In 1962, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

274.    In 1962, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

275.    In 1962, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

22

276.    That in 1962, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

277.    That in 1962, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

278.    That in 1962, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

279.    That in 1962, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

280.    That in 1962, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

281.    That in 1962, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

282.    That in 1962, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

283.    That in 1962, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

284.    That in 1962, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

285.    That in 1962, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

286.    That in 1962, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

23

287.    That in 1962, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

288.    That in 1962, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

289.    That in 1962, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

290.    That in 1962, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

291.    That in 1962, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

292.    That in 1962, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

293.    That in 1962, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

294.    That in 1962, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

295.    That in 1962, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

296.    That in 1962, TCE from the plant entered the air in Union, IL.

297.    That in 1962, TCA from the plant entered the air in Union, IL.

298.    That in 1962, DCE from the plant entered the air in Union, IL.

299.    That in 1962, DCA from the plant entered the air in Union, IL.

300.    That in 1962, PCE from the plant entered the air in Union, IL.

24

301.     That in 1962, TCE from the plant entered the Harper residence basement.

302.     That in 1962, TCE from the plant entered the Harper residence crawl spaces.

303.     That in 1962, TCE from the plant entered the Harper residence home.

304.     That in 1962, TCA from the plant entered the Harper residence basement.

305.     That in 1962, TCA from the plant entered the Harper residence crawl spaces.

306.     That in 1962, TCA from the plant entered the Harper residence home.

307.     That in 1962, DCE from the plant entered the Harper residence basement.

308.     That in 1962, DCE from the plant entered the Harper residence crawl spaces.

309.     That in 1962, DCE from the plant entered the Harper residence home.

310.     That in 1962, DCA from the plant entered the Harper residence basement.

311.     That in 1962, DCA from the plant entered the Harper residence crawl spaces.

312.     That in 1962, DCA from the plant entered the Harper residence home.

313.     That in 1962, PCE from the plant entered the Harper residence basement.

314.     That in 1962, PCE from the plant entered the Harper residence crawl spaces.

315.     That in 1962, PCE from the plant entered the Harper residence home.

316.     In 1963, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

317.     In 1963, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

318.     In 1963, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

319.     In 1963, Techalloy operated the property at 6509 Olson Rd, Union, IL.

320.     In 1963, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

321.     In 1963, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

25

322.     In 1963, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

323.     In 1963, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

324.     In 1963, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

325.     In 1963, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

326.     In 1963, Techalloy purchased TCE for use at the plant.

327.     In 1963, Techalloy purchased TCA for use at the plant.

328.     In 1963, Techalloy purchased PCE for use at the plant.

329.     In 1963, Techalloy purchased DCE for use at the plant.

330.     In 1963, Techalloy purchased DCA for use at the plant.

331.     In 1963, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

332.     In 1963, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

333.     In 1963, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

334.     In 1963, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

335.     In 1963, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

336.     In 1963, Techalloy disposed of TCE used at the plant.

337.     In 1963, Techalloy was in control of disposing TCA at the plant.

338.     In 1963, Techalloy was in control of disposing PCE at the plant.

339.     In 1963, Techalloy was in control of disposing DCE at the plant.

26

340.     In 1963, Techalloy was in control of disposing DCA at the plant.

341.     In 1963, Techalloy designed an outdoor, concrete evaporation pad for TCE

342.     In 1963, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

343.     In 1963, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

344.     In 1963, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

345.     In 1963, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

346.     In 1963, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

347.     That in 1963, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

348.     That in 1963, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

349.     That in 1963, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

350.     That in 1963, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

351.     That in 1963, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

27

352.    That in 1963, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

353.    That in 1963, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

354.    That in 1963, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

355.    That in 1963, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

356.    That in 1963, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

357.    That in 1963, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

358.    That in 1963, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

359.    That in 1963, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

360.    That in 1963, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

361.    That in 1963, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.


362.    That in 1963, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

28

363. That in 1963, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

364. That in 1963, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

365. That in 1963, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

366. That in 1963, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

367. That in 1963, TCE from the plant entered the air in Union, IL.

368. That in 1963, TCA from the plant entered the air in Union, IL.

369. That in 1963, DCE from the plant entered the air in Union, IL.

370. That in 1963, DCA from the plant entered the air in Union, IL.

371. That in 1963, PCE from the plant entered the air in Union, IL.

372. That in 1963, TCE from the plant entered the Harper residence basement.

373. That in 1963, TCE from the plant entered the Harper residence crawl spaces.

374. That in 1963, TCE from the plant entered the Harper residence home.

375. That in 1963, TCA from the plant entered the Harper residence basement.

376. That in 1963, TCA from the plant entered the Harper residence crawl spaces.

377. That in 1963, TCA from the plant entered the Harper residence home.

378. That in 1963, DCE from the plant entered the Harper residence basement.

379. That in 1963, DCE from the plant entered the Harper residence crawl spaces.

380. That in 1963, DCE from the plant entered the Harper residence home.

381. That in 1963, DCA from the plant entered the Harper residence basement.

29

382.   That in 1963, DCA from the plant entered the Harper residence crawl spaces.

383.   That in 1963, DCA from the plant entered the Harper residence home.

384.   That in 1963, PCE from the plant entered the Harper residence basement.

385.   That in 1963, PCE from the plant entered the Harper residence crawl spaces.

386.   That in 1963, PCE from the plant entered the Harper residence home.

387.   In 1964, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

388.   In 1964, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

389.   In 1964, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

390.   In 1964, Techalloy operated the property at 6509 Olson Rd, Union, IL.

391.   In 1964, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

392.   In 1964, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

393.   In 1964, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

394.   In 1964, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

395.   In 1964, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

396.   In 1964, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

397.   In 1964, Techalloy purchased TCE for use at the plant.

398.   In 1964, Techalloy purchased TCA for use at the plant.

30

399.    In 1964, Techalloy purchased PCE for use at the plant.

400.    In 1964, Techalloy purchased DCE for use at the plant.

401.    In 1964, Techalloy purchased DCA for use at the plant.

402.    In 1964, Techalloy used TCE in its business operations at 6509 Olson Rd, Union,

IL.

403.    In 1964, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

404.    In 1964, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

405.    In 1964, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

406.    In 1964, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

407.    In 1964, Techalloy disposed of TCE used at the plant.

408.    In 1964, Techalloy was in control of disposing TCA at the plant.

409.    In 1964, Techalloy was in control of disposing PCE at the plant.

410.    In 1964, Techalloy was in control of disposing DCE at the plant.

411.    In 1964, Techalloy was in control of disposing DCA at the plant.

412.    In 1964, Techalloy designed an outdoor, concrete evaporation pad for TCE

413.    In 1964, Techalloy manufactured, built, or otherwise made an outdoor concrete
evaporation pad for TCE

414.    In 1964, Techalloy maintained the outdoor concrete evaporation pad where TCE
was used to clean wire.

415.    In 1964, Techalloy maintained the outdoor concrete evaporation pad where PCE
was used to clean wire.

416.    In 1964, Techalloy operated the outdoor concrete evaporation pad where TCE
was used to clean wire.

31

417.    In 1964, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

418.    That in 1964, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

419.    That in 1964, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

420.    That in 1964, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

421.    That in 1964, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

422.    That in 1964, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

423.    That in 1964, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

424.    That in 1964, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

425.    That in 1964, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

426.    That in 1964, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

427.    That in 1964, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

32

428.    That in 1964, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

429.    That in 1964, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

430.    That in 1964, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

431.    That in 1964, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

432.    That in 1964, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

433.    That in 1964, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

434.    That in 1964, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

435.    That in 1964, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

436.    That in 1964, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

437.    That in 1964, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

438.    That in 1964, TCE from the plant entered the air in Union, IL.

439.    That in 1964, TCA from the plant entered the air in Union, IL.

440.    That in 1964, DCE from the plant entered the air in Union, IL.

33

441.    That in 1964, DCA from the plant entered the air in Union, IL.

442.    That in 1964, PCE from the plant entered the air in Union, IL.

443.    That in 1964, TCE from the plant entered the Harper residence basement.

444.    That in 1964, TCE from the plant entered the Harper residence crawl spaces.

445.    That in 1964, TCE from the plant entered the Harper residence home.

446.    That in 1964, TCA from the plant entered the Harper residence basement.

447.    That in 1964, TCA from the plant entered the Harper residence crawl spaces.

448.    That in 1964, TCA from the plant entered the Harper residence home.

449.    That in 1964, DCE from the plant entered the Harper residence basement.

450.    That in 1964, DCE from the plant entered the Harper residence crawl spaces.

451.    That in 1964, DCE from the plant entered the Harper residence home.

452.    That in 1964, DCA from the plant entered the Harper residence basement.

453.    That in 1964, DCA from the plant entered the Harper residence crawl spaces.

454.    That in 1964, DCA from the plant entered the Harper residence home.

455.    That in 1964, PCE from the plant entered the Harper residence basement.

456.    That in 1964, PCE from the plant entered the Harper residence crawl spaces.

457.    That in 1964, PCE from the plant entered the Harper residence home.

458.    In 1965, Techalloy had an ownership interest in the property located at 6509

Olson Road, Union Illinois.

459.    In 1965, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

460.    In 1965, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

461.    In 1965, Techalloy operated the property at 6509 Olson Rd, Union, IL.

462.    In 1965, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

34

463.    In 1965, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

464.    In 1965, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

465.    In 1965, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

466.    In 1965, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

467.    In 1965, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

468.    In 1965, Techalloy purchased TCE for use at the plant.

469.    In 1965, Techalloy purchased TCA for use at the plant.

470.    In 1965, Techalloy purchased PCE for use at the plant.

471.    In 1965, Techalloy purchased DCE for use at the plant.

472.    In 1965, Techalloy purchased DCA for use at the plant.

473.    In 1965, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

474.    In 1965, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

475.    In 1965, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

476.    In 1965, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

477.    In 1965, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

478.    In 1965, Techalloy disposed of TCE used at the plant.

479.    In 1965, Techalloy was in control of disposing TCA at the plant.

35

480. In 1965, Techalloy was in control of disposing PCE at the plant.

481. In 1965, Techalloy was in control of disposing DCE at the plant.

482. In 1965, Techalloy was in control of disposing DCA at the plant.

483. In 1965, Techalloy designed an outdoor, concrete evaporation pad for TCE

484. In 1965, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

485. In 1965, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

486. In 1965, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

487. In 1965, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

488. In 1965, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

489. That in 1965, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

490. That in 1965, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

491. That in 1965, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

492. That in 1965, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

36

493.     That in 1965, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

494.     That in 1965, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

495.     That in 1965, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

496.     That in 1965, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

497.     That in 1965, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

498.     That in 1965, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

499.     That in 1965, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

500.     That in 1965, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

501.     That in 1965, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

502.     That in 1965, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

503.     That in 1965, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

37

504.    That in 1965, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

505.    That in 1965, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

506.    That in 1965, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

507.    That in 1965, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

508.    That in 1965, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

509.    That in 1965, TCE from the plant entered the air in Union, IL.

510.    That in 1965, TCA from the plant entered the air in Union, IL.

511.    That in 1965, DCE from the plant entered the air in Union, IL.

512.    That in 1965, DCA from the plant entered the air in Union, IL.

513.    That in 1965, PCE from the plant entered the air in Union, IL.

514.    That in 1965, TCE from the plant entered the Harper residence basement.

515.    That in 1965, TCE from the plant entered the Harper residence crawl spaces.

516.    That in 1965, TCE from the plant entered the Harper residence home.

517.    That in 1965, TCA from the plant entered the Harper residence basement.

518.    That in 1965, TCA from the plant entered the Harper residence crawl spaces.

519.    That in 1965, TCA from the plant entered the Harper residence home.

520.    That in 1965, DCE from the plant entered the Harper residence basement.

521.    That in 1965, DCE from the plant entered the Harper residence crawl spaces.

38

522.   That in 1965, DCE from the plant entered the Harper residence home.

523.   That in 1965, DCA from the plant entered the Harper residence basement.

524.   That in 1965, DCA from the plant entered the Harper residence crawl spaces.

525.   That in 1965, DCA from the plant entered the Harper residence home.

526.   That in 1965, PCE from the plant entered the Harper residence basement.

527.   That in 1965, PCE from the plant entered the Harper residence crawl spaces.

528.   That in 1965, PCE from the plant entered the Harper residence home.

529.   In 1966, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

530.   In 1966, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

531.   In 1966, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

532.   In 1966, Techalloy operated the property at 6509 Olson Rd, Union, IL.

533.   In 1966, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

534.   In 1966, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

535.   In 1966, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

536.   In 1966, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

537.   In 1966, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

538.   In 1966, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

39

539.   In 1966, Techalloy purchased TCE for use at the plant.

540.   In 1966, Techalloy purchased TCA for use at the plant.

541.   In 1966, Techalloy purchased PCE for use at the plant.

542.   In 1966, Techalloy purchased DCE for use at the plant.

543.   In 1966, Techalloy purchased DCA for use at the plant.

544.   In 1966, Techalloy used TCE in its business operations at 6509 Olson Rd, Union,

IL.

545.   In 1966, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

546.   In 1966, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

547.   In 1966, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

548.   In 1966, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

549.   In 1966, Techalloy disposed of TCE used at the plant.

550.   In 1966, Techalloy was in control of disposing TCA at the plant.

551.   In 1966, Techalloy was in control of disposing PCE at the plant.

552.   In 1966, Techalloy was in control of disposing DCE at the plant.

553.   In 1966, Techalloy was in control of disposing DCA at the plant.

554.   In 1966, Techalloy designed an outdoor, concrete evaporation pad for TCE

555.   In 1966, Techalloy manufactured, built, or otherwise made an outdoor concrete

evaporation pad for TCE

556.   In 1966, Techalloy maintained the outdoor concrete evaporation pad where TCE

was used to clean wire.

557.   In 1966, Techalloy maintained the outdoor concrete evaporation pad where PCE

was used to clean wire.

40

558. In 1966, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

559. In 1966, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

560. That in 1966, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

561. That in 1966, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

562. That in 1966, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

563. That in 1966, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

564. That in 1966, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

565. That in 1966, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

566. That in 1966, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

567. That in 1966, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

568. That in 1966, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

41

569.     That in 1966, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

570.     That in 1966, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

571.     That in 1966, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

572.     That in 1966, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

573.     That in 1966, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

574.     That in 1966, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

575.     That in 1966, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

576.     That in 1966, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

577.     That in 1966, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

578.     That in 1966, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

579.     That in 1966, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

580.     That in 1966, TCE from the plant entered the air in Union, IL.

42

581. That in 1966, TCA from the plant entered the air in Union, IL.

582. That in 1966, DCE from the plant entered the air in Union, IL.

583. That in 1966, DCA from the plant entered the air in Union, IL.

584. That in 1966, PCE from the plant entered the air in Union, IL.

585. That in 1966, TCE from the plant entered the Harper residence basement.

586. That in 1966, TCE from the plant entered the Harper residence crawl spaces.

587. That in 1966, TCE from the plant entered the Harper residence home.

588. That in 1966, TCA from the plant entered the Harper residence basement.

589. That in 1966, TCA from the plant entered the Harper residence crawl spaces.

590. That in 1966, TCA from the plant entered the Harper residence home.

591. That in 1966, DCE from the plant entered the Harper residence basement.

592. That in 1966, DCE from the plant entered the Harper residence crawl spaces.

593. That in 1966, DCE from the plant entered the Harper residence home.

594. That in 1966, DCA from the plant entered the Harper residence basement.

595. That in 1966, DCA from the plant entered the Harper residence crawl spaces.

596. That in 1966, DCA from the plant entered the Harper residence home.

597. That in 1966, PCE from the plant entered the Harper residence basement.

598. That in 1966, PCE from the plant entered the Harper residence crawl spaces.

599. That in 1966, PCE from the plant entered the Harper residence home.

600. In 1967, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

601. In 1967, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

602. In 1967, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

43

603.    In 1967, Techalloy operated the property at 6509 Olson Rd, Union, IL.

604.    In 1967, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

605.    In 1967, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

606.    In 1967, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

607.    In 1967, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

608.    In 1967, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

609.    In 1967, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

610.    In 1967, Techalloy purchased TCE for use at the plant.

611.    In 1967, Techalloy purchased TCA for use at the plant.

612.    In 1967, Techalloy purchased PCE for use at the plant.

613.    In 1967, Techalloy purchased DCE for use at the plant.

614.    In 1967, Techalloy purchased DCA for use at the plant.

615.    In 1967, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

616.    In 1967, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

617.    In 1967, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

618.    In 1967, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

619.    In 1967, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

44

620.    In 1967, Techalloy disposed of TCE used at the plant.

621.    In 1967, Techalloy was in control of disposing TCA at the plant.

622.    In 1967, Techalloy was in control of disposing PCE at the plant.

623.    In 1967, Techalloy was in control of disposing DCE at the plant.

624.    In 1967, Techalloy was in control of disposing DCA at the plant.

625.    In 1967, Techalloy designed an outdoor, concrete evaporation pad for TCE

626.    In 1967, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

627.    In 1967, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

628.    In 1967, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

629.    In 1967, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

630.    In 1967, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

631.    That in 1967, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

632.    That in 1967, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

633.    That in 1967, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

45

634.    That in 1967, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

635.    That in 1967, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

636.    That in 1967, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

637.    That in 1967, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

638.    That in 1967, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

639.    That in 1967, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

640.    That in 1967, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

641.    That in 1967, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

642.    That in 1967, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

643.    That in 1967, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

644.    That in 1967, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

46

645.    That in 1967, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

646.    That in 1967, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

647.    That in 1967, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

648.    That in 1967, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

649.    That in 1967, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

650.    That in 1967, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

651.    That in 1967, TCE from the plant entered the air in Union, IL.

652.    That in 1967, TCA from the plant entered the air in Union, IL.

653.    That in 1967, DCE from the plant entered the air in Union, IL.

654.    That in 1967, DCA from the plant entered the air in Union, IL.

655.    That in 1967, PCE from the plant entered the air in Union, IL.

656.    That in 1967, TCE from the plant entered the Harper residence basement.

657.    That in 1967, TCE from the plant entered the Harper residence crawl spaces.

658.    That in 1967, TCE from the plant entered the Harper residence home.

659.    That in 1967, TCA from the plant entered the Harper residence basement.

660.    That in 1967, TCA from the plant entered the Harper residence crawl spaces.

661.    That in 1967, TCA from the plant entered the Harper residence home.

47

662.    That in 1967, DCE from the plant entered the Harper residence basement.

663.    That in 1967, DCE from the plant entered the Harper residence crawl spaces.

664.    That in 1967, DCE from the plant entered the Harper residence home.

665.    That in 1967, DCA from the plant entered the Harper residence basement.

666.    That in 1967, DCA from the plant entered the Harper residence crawl spaces.

667.    That in 1967, DCA from the plant entered the Harper residence home.

668.    That in 1967, PCE from the plant entered the Harper residence basement.

669.    That in 1967, PCE from the plant entered the Harper residence crawl spaces.

670.    That in 1967, PCE from the plant entered the Harper residence home.

671.    In 1968, Techalloy had an ownership interest in the property located at 6509

Olson Road, Union Illinois.

672.    In 1968, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

673.    In 1968, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

674.    In 1968, Techalloy operated the property at 6509 Olson Rd, Union, IL.

675.    In 1968, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

676.    In 1968, Techalloy had an ownership interest in the property doing business at

6509 Olson Rd, Union, IL.

677.    In 1968, Techalloy maintained the factory doing business at 6509 Olson Rd,

Union, IL.

678.    In 1968, Techalloy controlled the factory doing business at 6509 Olson Rd,

Union, IL.

679.    In 1968, Techalloy operated the factory doing business at 6509 Olson Rd, Union,

IL.

48

680.    In 1968, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

681.    In 1968, Techalloy purchased TCE for use at the plant.

682.    In 1968, Techalloy purchased TCA for use at the plant.

683.    In 1968, Techalloy purchased PCE for use at the plant.

684.    In 1968, Techalloy purchased DCE for use at the plant.

685.    In 1968, Techalloy purchased DCA for use at the plant.

686.    In 1968, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

687.    In 1968, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

688.    In 1968, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

689.    In 1968, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

690.    In 1968, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

691.    In 1968, Techalloy disposed of TCE used at the plant.

692.    In 1968, Techalloy was in control of disposing TCA at the plant.

693.    In 1968, Techalloy was in control of disposing PCE at the plant.

694.    In 1968, Techalloy was in control of disposing DCE at the plant.

695.    In 1968, Techalloy was in control of disposing DCA at the plant.

696.    In 1968, Techalloy designed an outdoor, concrete evaporation pad for TCE

697.    In 1968, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

698.    In 1968, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

49

699.    In 1968, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

700.    In 1968, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

701.    In 1968, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

702.    That in 1968, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

703.    That in 1968, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

704.    That in 1968, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

705.    That in 1968, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

706.    That in 1968, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

707.    That in 1968, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

708.    That in 1968, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

709.    That in 1968, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

50

710.     That in 1968, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

711.     That in 1968, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

712.     That in 1968, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

713.     That in 1968, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

714.     That in 1968, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

715.     That in 1968, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

716.     That in 1968, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

717.     That in 1968, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

718.     That in 1968, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

719.     That in 1968, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

720.     That in 1968, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

51

721.    That in 1968, PCE from the plant entered the groundwater of Evergreen Middle

School, in Union, IL.

722.    That in 1968, TCE from the plant entered the air in Union, IL.

723.    That in 1968, TCA from the plant entered the air in Union, IL.

724.    That in 1968, DCE from the plant entered the air in Union, IL.

725.    That in 1968, DCA from the plant entered the air in Union, IL.

726.    That in 1968, PCE from the plant entered the air in Union, IL.

727.    That in 1968, TCE from the plant entered the Harper residence basement.

728.    That in 1968, TCE from the plant entered the Harper residence crawl spaces.

729.    That in 1968, TCE from the plant entered the Harper residence home.

730.    That in 1968, TCA from the plant entered the Harper residence basement.

731.    That in 1968, TCA from the plant entered the Harper residence crawl spaces.

732.    That in 1968, TCA from the plant entered the Harper residence home.

733.    That in 1968, DCE from the plant entered the Harper residence basement.

734.    That in 1968, DCE from the plant entered the Harper residence crawl spaces.

735.    That in 1968, DCE from the plant entered the Harper residence home.

736.    That in 1968, DCA from the plant entered the Harper residence basement.

737.    That in 1968, DCA from the plant entered the Harper residence crawl spaces.

738.    That in 1968, DCA from the plant entered the Harper residence home.

739.    That in 1968, PCE from the plant entered the Harper residence basement.

740.    That in 1968, PCE from the plant entered the Harper residence crawl spaces.

741.    That in 1968, PCE from the plant entered the Harper residence home.

52

742. In 1969, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

743. In 1969, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

744. In 1969, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

745. In 1969, Techalloy operated the property at 6509 Olson Rd, Union, IL.

746. In 1969, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

747. In 1969, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

748. In 1969, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

749. In 1969, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

750. In 1969, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

751. In 1969, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

752. In 1969, Techalloy purchased TCE for use at the plant.

753. In 1969, Techalloy purchased TCA for use at the plant.

754. In 1969, Techalloy purchased PCE for use at the plant.

755. In 1969, Techalloy purchased DCE for use at the plant.

756. In 1969, Techalloy purchased DCA for use at the plant.

757. In 1969, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

53

758.    In 1969, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

759.    In 1969, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

760.    In 1969, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

761.    In 1969, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

762.    In 1969, Techalloy disposed of TCE used at the plant.

763.    In 1969, Techalloy was in control of disposing TCA at the plant.

764.    In 1969, Techalloy was in control of disposing PCE at the plant.

765.    In 1969, Techalloy was in control of disposing DCE at the plant.

766.    In 1969, Techalloy was in control of disposing DCA at the plant.

767.    In 1969, Techalloy designed an outdoor, concrete evaporation pad for TCE

768.    In 1969, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

769.    In 1969, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

770.    In 1969, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

771.    In 1969, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

772.    In 1969, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

773.    That in 1969, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

54

774.     That in 1969, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

775.     That in 1969, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

776.     That in 1969, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

777.     That in 1969, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

778.     That in 1969, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

779.     That in 1969, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

780.     That in 1969, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

781.     That in 1969, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

782.     That in 1969, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

783.     That in 1969, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

784.     That in 1969, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

55

785.    That in 1969, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

786.    That in 1969, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

787.    That in 1969, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

788.    That in 1969, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

789.    That in 1969, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

790.    That in 1969, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

791.    That in 1969, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

792.    That in 1969, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

793.    That in 1969, TCE from the plant entered the air in Union, IL.

794.    That in 1969, TCA from the plant entered the air in Union, IL.

795.    That in 1969, DCE from the plant entered the air in Union, IL.

796.    That in 1969, DCA from the plant entered the air in Union, IL.

797.    That in 1969, PCE from the plant entered the air in Union, IL.

798.    That in 1969, TCE from the plant entered the Harper residence basement.

799.    That in 1969, TCE from the plant entered the Harper residence crawl spaces.

56

800.    That in 1969, TCE from the plant entered the Harper residence home.

801.    That in 1969, TCA from the plant entered the Harper residence basement.

802.    That in 1969, TCA from the plant entered the Harper residence crawl spaces.

803.    That in 1969, TCA from the plant entered the Harper residence home.

804.    That in 1969, DCE from the plant entered the Harper residence basement.

805.    That in 1969, DCE from the plant entered the Harper residence crawl spaces.

806.    That in 1969, DCE from the plant entered the Harper residence home.

807.    That in 1969, DCA from the plant entered the Harper residence basement.

808.    That in 1969, DCA from the plant entered the Harper residence crawl spaces.

809.    That in 1969, DCA from the plant entered the Harper residence home.

810.    That in 1969, PCE from the plant entered the Harper residence basement.

811.    That in 1969, PCE from the plant entered the Harper residence crawl spaces.

812.    That in 1969, PCE from the plant entered the Harper residence home.

813.    In 1970, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

814.    In 1970, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

815.    In 1970, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

816.    In 1970, Techalloy operated the property at 6509 Olson Rd, Union, IL.

817.    In 1970, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

818.    In 1970, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

819.    In 1970, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

57

820.    In 1970, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

821.    In 1970, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

822.    In 1970, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

823.    In 1970, Techalloy purchased TCE for use at the plant.

824.    In 1970, Techalloy purchased TCA for use at the plant.

825.    In 1970, Techalloy purchased PCE for use at the plant.

826.    In 1970, Techalloy purchased DCE for use at the plant.

827.    In 1970, Techalloy purchased DCA for use at the plant.

828.    In 1970, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

829.    In 1970, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

830.    In 1970, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

831.    In 1970, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

832.    In 1970, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

833.    In 1970, Techalloy disposed of TCE used at the plant.

834.    In 1970, Techalloy was in control of disposing TCA at the plant.

835.    In 1970, Techalloy was in control of disposing PCE at the plant.

836.    In 1970, Techalloy was in control of disposing DCE at the plant.

837.    In 1970, Techalloy was in control of disposing DCA at the plant.

838.    In 1970, Techalloy designed an outdoor, concrete evaporation pad for TCE

58

839.    In 1970, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

840.    In 1970, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

841.    In 1970, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

842.    In 1970, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

843.    In 1970, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

844.    That in 1970, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

845.    That in 1970, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

846.    That in 1970, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

847.    That in 1970, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

848.    That in 1970, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

849.    That in 1970, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

59

850. That in 1970, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

851. That in 1970, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

852. That in 1970, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

853. That in 1970, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

854. That in 1970, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

855. That in 1970, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

856. That in 1970, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

857. That in 1970, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

858. That in 1970, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

859. That in 1970, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

60

860.   That in 1970, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

861.   That in 1970, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

862.   That in 1970, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

863.   That in 1970, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

864.   That in 1970, TCE from the plant entered the air in Union, IL.

865.   That in 1970, TCA from the plant entered the air in Union, IL.

866.   That in 1970, DCE from the plant entered the air in Union, IL.

867.   That in 1970, DCA from the plant entered the air in Union, IL.

868.   That in 1970, PCE from the plant entered the air in Union, IL.

869.   That in 1970, TCE from the plant entered the Harper residence basement.

870.   That in 1970, TCE from the plant entered the Harper residence crawl spaces.

871.   That in 1970, TCE from the plant entered the Harper residence home.

872.   That in 1970, TCA from the plant entered the Harper residence basement.

873.   That in 1970, TCA from the plant entered the Harper residence crawl spaces.

874.   That in 1970, TCA from the plant entered the Harper residence home.

875.   That in 1970, DCE from the plant entered the Harper residence basement.

876.   That in 1970, DCE from the plant entered the Harper residence crawl spaces.

877.   That in 1970, DCE from the plant entered the Harper residence home.

878.   That in 1970, DCA from the plant entered the Harper residence basement.

61

879.    That in 1970, DCA from the plant entered the Harper residence crawl spaces.

880.    That in 1970, DCA from the plant entered the Harper residence home.

881.    That in 1970, PCE from the plant entered the Harper residence basement.

882.    That in 1970, PCE from the plant entered the Harper residence crawl spaces.

883.    That in 1970, PCE from the plant entered the Harper residence home.

884.    In 1971, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

885.    In 1971, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

886.    In 1971, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

887.    In 1971, Techalloy operated the property at 6509 Olson Rd, Union, IL.

888.    In 1971, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

889.    In 1971, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

890.    In 1971, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

891.    In 1971, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

892.    In 1971, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

893.    In 1971, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

894.    In 1971, Techalloy purchased TCE for use at the plant.

895.    In 1971, Techalloy purchased TCA for use at the plant.

62

896.     In 1971, Techalloy purchased PCE for use at the plant.

897.     In 1971, Techalloy purchased DCE for use at the plant.

898.     In 1971, Techalloy purchased DCA for use at the plant.

899.     In 1971, Techalloy used TCE in its business operations at 6509 Olson Rd, Union,

IL.

900.     In 1971, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

901.     In 1971, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

902.     In 1971, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

903.     In 1971, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

904.     In 1971, Techalloy disposed of TCE used at the plant.

905.     In 1971, Techalloy was in control of disposing TCA at the plant.

906.     In 1971, Techalloy was in control of disposing PCE at the plant.

907.     In 1971, Techalloy was in control of disposing DCE at the plant.

908.     In 1971, Techalloy was in control of disposing DCA at the plant.

909.     In 1971, Techalloy designed an outdoor, concrete evaporation pad for TCE

910.     In 1971, Techalloy manufactured, built, or otherwise made an outdoor concrete

evaporation pad for TCE

911.     In 1971, Techalloy maintained the outdoor concrete evaporation pad where TCE

was used to clean wire.

912.     In 1971, Techalloy maintained the outdoor concrete evaporation pad where PCE

was used to clean wire.

913.     In 1971, Techalloy operated the outdoor concrete evaporation pad where TCE

was used to clean wire.

63

914.　　In 1971, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

915.　　That in 1971, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

916.　　That in 1971, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

917.　　That in 1971, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

918.　　That in 1971, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

919.　　That in 1971, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

920.　　That in 1971, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

921.　　That in 1971, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

922.　　That in 1971, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

923.　　That in 1971, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

924.　　That in 1971, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

925.    That in 1971, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

926.    That in 1971, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

927.    That in 1971, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

928.    That in 1971, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

929.    That in 1971, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

930.    That in 1971, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

931.    That in 1971, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

932.    That in 1971, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

933.    That in 1971, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

934.    That in 1971, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

935.    That in 1971, TCE from the plant entered the air in Union, IL.

936.    That in 1971, TCA from the plant entered the air in Union, IL.

937.    That in 1971, DCE from the plant entered the air in Union, IL.

65

938.    That in 1971, DCA from the plant entered the air in Union, IL.

939.    That in 1971, PCE from the plant entered the air in Union, IL.

940.    That in 1971, TCE from the plant entered the Harper residence basement.

941.    That in 1971, TCE from the plant entered the Harper residence crawl spaces.

942.    That in 1971, TCE from the plant entered the Harper residence home.

943.    That in 1971, TCA from the plant entered the Harper residence basement.

944.    That in 1971, TCA from the plant entered the Harper residence crawl spaces.

945.    That in 1971, TCA from the plant entered the Harper residence home.

946.    That in 1971, DCE from the plant entered the Harper residence basement.

947.    That in 1971, DCE from the plant entered the Harper residence crawl spaces.

948.    That in 1971, DCE from the plant entered the Harper residence home.

949.    That in 1971, DCA from the plant entered the Harper residence basement.

950.    That in 1971, DCA from the plant entered the Harper residence crawl spaces.

951.    That in 1971, DCA from the plant entered the Harper residence home.

952.    That in 1971, PCE from the plant entered the Harper residence basement.

953.    That in 1971, PCE from the plant entered the Harper residence crawl spaces.

954.    That in 1971, PCE from the plant entered the Harper residence home.

955.    In 1972, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

956.    In 1972, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

957.    In 1972, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

958.    In 1972, Techalloy operated the property at 6509 Olson Rd, Union, IL.

959.    In 1972, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

66

960.    In 1972, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

961.    In 1972, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

962.    In 1972, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

963.    In 1972, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

964.    In 1972, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

965.    In 1972, Techalloy purchased TCE for use at the plant.

966.    In 1972, Techalloy purchased TCA for use at the plant.

967.    In 1972, Techalloy purchased PCE for use at the plant.

968.    In 1972, Techalloy purchased DCE for use at the plant.

969.    In 1972, Techalloy purchased DCA for use at the plant.

970.    In 1972, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

971.    In 1972, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

972.    In 1972, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

973.    In 1972, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

974.    In 1972, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

975.    In 1972, Techalloy disposed of TCE used at the plant.

976.    In 1972, Techalloy was in control of disposing TCA at the plant.

67

977.    In 1972, Techalloy was in control of disposing PCE at the plant.

978.    In 1972, Techalloy was in control of disposing DCE at the plant.

979.    In 1972, Techalloy was in control of disposing DCA at the plant.

980.    In 1972, Techalloy designed an outdoor, concrete evaporation pad for TCE

981.    In 1972, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

982.    In 1972, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

983.    In 1972, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

984.    In 1972, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

985.    In 1972, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

986.    That in 1972, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

987.    That in 1972, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

988.    That in 1972, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

989.    That in 1972, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

68

990.    That in 1972, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

991.    That in 1972, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

992.    That in 1972, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

993.    That in 1972, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

994.    That in 1972, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

995.    That in 1972, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

996.    That in 1972, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

997.    That in 1972, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

998.    That in 1972, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

999.    That in 1972, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1000.   That in 1972, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

69

1001.  That in 1972, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1002.  That in 1972, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1003.  That in 1972, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1004.  That in 1972, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1005.  That in 1972, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1006.  That in 1972, TCE from the plant entered the air in Union, IL.

1007.  That in 1972, TCA from the plant entered the air in Union, IL.

1008.  That in 1972, DCE from the plant entered the air in Union, IL.

1009.  That in 1972, DCA from the plant entered the air in Union, IL.

1010.  That in 1972, PCE from the plant entered the air in Union, IL.

1011.  That in 1972, TCE from the plant entered the Harper residence basement.

1012.  That in 1972, TCE from the plant entered the Harper residence crawl spaces.

1013.  That in 1972, TCE from the plant entered the Harper residence home.

1014.  That in 1972, TCA from the plant entered the Harper residence basement.

1015.  That in 1972, TCA from the plant entered the Harper residence crawl spaces.

1016.  That in 1972, TCA from the plant entered the Harper residence home.

1017.  That in 1972, DCE from the plant entered the Harper residence basement.

1018.  That in 1972, DCE from the plant entered the Harper residence crawl spaces.

70

1019.   That in 1972, DCE from the plant entered the Harper residence home.

1020.   That in 1972, DCA from the plant entered the Harper residence basement.

1021.   That in 1972, DCA from the plant entered the Harper residence crawl spaces.

1022.   That in 1972, DCA from the plant entered the Harper residence home.

1023.   That in 1972, PCE from the plant entered the Harper residence basement.

1024.   That in 1972, PCE from the plant entered the Harper residence crawl spaces.

1025.   That in 1972, PCE from the plant entered the Harper residence home.

1026.   In 1973, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1027.   In 1973, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1028.   In 1973, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1029.   In 1973, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1030.   In 1973, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1031.   In 1973, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1032.   In 1973, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1033.   In 1973, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1034.   In 1973, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1035.   In 1973, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

71

1036.   In 1973, Techalloy purchased TCE for use at the plant.

1037.   In 1973, Techalloy purchased TCA for use at the plant.

1038.   In 1973, Techalloy purchased PCE for use at the plant.

1039.   In 1973, Techalloy purchased DCE for use at the plant.

1040.   In 1973, Techalloy purchased DCA for use at the plant.

1041.   In 1973, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1042.   In 1973, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1043.   In 1973, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1044.   In 1973, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1045.   In 1973, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1046.   In 1973, Techalloy disposed of TCE used at the plant.

1047.   In 1973, Techalloy was in control of disposing TCA at the plant.

1048.   In 1973, Techalloy was in control of disposing PCE at the plant.

1049.   In 1973, Techalloy was in control of disposing DCE at the plant.

1050.   In 1973, Techalloy was in control of disposing DCA at the plant.

1051.   In 1973, Techalloy designed an outdoor, concrete evaporation pad for TCE

1052.   In 1973, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1053.   In 1973, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1054.   In 1973, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

72

1055.   In 1973, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1056.   In 1973, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1057.   That in 1973, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1058.   That in 1973, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1059.   That in 1973, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1060.   That in 1973, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1061.   That in 1973, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1062.   That in 1973, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1063.   That in 1973, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1064.   That in 1973, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1065.   That in 1973, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

73

1066.   That in 1973, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1067.   That in 1973, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1068.   That in 1973, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1069.   That in 1973, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1070.   That in 1973, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1071.   That in 1973, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1072.   That in 1973, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1073.   That in 1973, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1074.   That in 1973, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1075.   That in 1973, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1076.   That in 1973, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1077.   That in 1973, TCE from the plant entered the air in Union, IL.

74

1078.   That in 1973, TCA from the plant entered the air in Union, IL.

1079.   That in 1973, DCE from the plant entered the air in Union, IL.

1080.   That in 1973, DCA from the plant entered the air in Union, IL.

1081.   That in 1973, PCE from the plant entered the air in Union, IL.

1082.   That in 1973, TCE from the plant entered the Harper residence basement.

1083.   That in 1973, TCE from the plant entered the Harper residence crawl spaces.

1084.   That in 1973, TCE from the plant entered the Harper residence home.

1085.   That in 1973, TCA from the plant entered the Harper residence basement.

1086.   That in 1973, TCA from the plant entered the Harper residence crawl spaces.

1087.   That in 1973, TCA from the plant entered the Harper residence home.

1088.   That in 1973, DCE from the plant entered the Harper residence basement.

1089.   That in 1973, DCE from the plant entered the Harper residence crawl spaces.

1090.   That in 1973, DCE from the plant entered the Harper residence home.

1091.   That in 1973, DCA from the plant entered the Harper residence basement.

1092.   That in 1973, DCA from the plant entered the Harper residence crawl spaces.

1093.   That in 1973, DCA from the plant entered the Harper residence home.

1094.   That in 1973, PCE from the plant entered the Harper residence basement.

1095.   That in 1973, PCE from the plant entered the Harper residence crawl spaces.

1096.   That in 1973, PCE from the plant entered the Harper residence home.

1097.   In 1974, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1098.   In 1974, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1099.   In 1974, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

75

1100. In 1974, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1101. In 1974, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1102. In 1974, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1103. In 1974, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1104. In 1974, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1105. In 1974, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1106. In 1974, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1107. In 1974, Techalloy purchased TCE for use at the plant.

1108. In 1974, Techalloy purchased TCA for use at the plant.

1109. In 1974, Techalloy purchased PCE for use at the plant.

1110. In 1974, Techalloy purchased DCE for use at the plant.

1111. In 1974, Techalloy purchased DCA for use at the plant.

1112. In 1974, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1113. In 1974, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1114. In 1974, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1115. In 1974, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1116. In 1974, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

76

1117.   In 1974, Techalloy disposed of TCE used at the plant.

1118.   In 1974, Techalloy was in control of disposing TCA at the plant.

1119.   In 1974, Techalloy was in control of disposing PCE at the plant.

1120.   In 1974, Techalloy was in control of disposing DCE at the plant.

1121.   In 1974, Techalloy was in control of disposing DCA at the plant.

1122.   In 1974, Techalloy designed an outdoor, concrete evaporation pad for TCE

1123.   In 1974, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1124.   In 1974, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1125.   In 1974, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1126.   In 1974, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1127.   In 1974, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1128.   That in 1974, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1129.   That in 1974, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1130.   That in 1974, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

77

1131.   That in 1974, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1132.   That in 1974, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1133.   That in 1974, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1134.   That in 1974, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1135.   That in 1974, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1136.   That in 1974, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1137.   That in 1974, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1138.   That in 1974, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1139.   That in 1974, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1140.   That in 1974, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1141.   That in 1974, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

78

1142.   That in 1974, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1143.   That in 1974, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1144.   That in 1974, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1145.   That in 1974, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1146.   That in 1974, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1147.   That in 1974, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1148.   That in 1974, TCE from the plant entered the air in Union, IL.

1149.   That in 1974, TCA from the plant entered the air in Union, IL.

1150.   That in 1974, DCE from the plant entered the air in Union, IL.

1151.   That in 1974, DCA from the plant entered the air in Union, IL.

1152.   That in 1974, PCE from the plant entered the air in Union, IL.

1153.   That in 1974, TCE from the plant entered the Harper residence basement.

1154.   That in 1974, TCE from the plant entered the Harper residence crawl spaces.

1155.   That in 1974, TCE from the plant entered the Harper residence home.

1156.   That in 1974, TCA from the plant entered the Harper residence basement.

1157.   That in 1974, TCA from the plant entered the Harper residence crawl spaces.

1158.   That in 1974, TCA from the plant entered the Harper residence home.

79

1159.   That in 1974, DCE from the plant entered the Harper residence basement.

1160.   That in 1974, DCE from the plant entered the Harper residence crawl spaces.

1161.   That in 1974, DCE from the plant entered the Harper residence home.

1162.   That in 1974, DCA from the plant entered the Harper residence basement.

1163.   That in 1974, DCA from the plant entered the Harper residence crawl spaces.

1164.   That in 1974, DCA from the plant entered the Harper residence home.

1165.   That in 1974, PCE from the plant entered the Harper residence basement.

1166.   That in 1974, PCE from the plant entered the Harper residence crawl spaces.

1167.   That in 1974, PCE from the plant entered the Harper residence home.

1168.   In 1975, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1169.   In 1975, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1170.   In 1975, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1171.   In 1975, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1172.   In 1975, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1173.   In 1975, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1174.   In 1975, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1175.   In 1975, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1176.   In 1975, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

80

1177.   In 1975, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1178.   In 1975, Techalloy purchased TCE for use at the plant.

1179.   In 1975, Techalloy purchased TCA for use at the plant.

1180.   In 1975, Techalloy purchased PCE for use at the plant.

1181.   In 1975, Techalloy purchased DCE for use at the plant.

1182.   In 1975, Techalloy purchased DCA for use at the plant.

1183.   In 1975, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1184.   In 1975, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1185.   In 1975, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1186.   In 1975, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1187.   In 1975, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1188.   In 1975, Techalloy disposed of TCE used at the plant.

1189.   In 1975, Techalloy was in control of disposing TCA at the plant.

1190.   In 1975, Techalloy was in control of disposing PCE at the plant.

1191.   In 1975, Techalloy was in control of disposing DCE at the plant.

1192.   In 1975, Techalloy was in control of disposing DCA at the plant.

1193.   In 1975, Techalloy designed an outdoor, concrete evaporation pad for TCE

1194.   In 1975, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1195.   In 1975, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

81

1196.   In 1975, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1197.   In 1975, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1198.   In 1975, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1199.   That in 1975, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1200.   That in 1975, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1201.   That in 1975, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1202.   That in 1975, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1203.   That in 1975, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1204.   That in 1975, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1205.   That in 1975, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1206.   That in 1975, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

Received 06-24-2021 08:45 AM / Circuit Clerk Accepted on 06-24-2021 08:54 AM / Transaction #13796676 / Case #21LA000162
Page 82 of 289

1207.   That in 1975, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1208.   That in 1975, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1209.   That in 1975, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1210.   That in 1975, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1211.   That in 1975, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1212.   That in 1975, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1213.   That in 1975, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1214.   That in 1975, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1215.   That in 1975, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1216.   That in 1975, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1217.   That in 1975, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

83

1218.   That in 1975, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1219.   That in 1975, TCE from the plant entered the air in Union, IL.

1220.   That in 1975, TCA from the plant entered the air in Union, IL.

1221.   That in 1975, DCE from the plant entered the air in Union, IL.

1222.   That in 1975, DCA from the plant entered the air in Union, IL.

1223.   That in 1975, PCE from the plant entered the air in Union, IL.

1224.   That in 1975, TCE from the plant entered the Harper residence basement.

1225.   That in 1975, TCE from the plant entered the Harper residence crawl spaces.

1226.   That in 1975, TCE from the plant entered the Harper residence home.

1227.   That in 1975, TCA from the plant entered the Harper residence basement.

1228.   That in 1975, TCA from the plant entered the Harper residence crawl spaces.

1229.   That in 1975, TCA from the plant entered the Harper residence home.

1230.   That in 1975, DCE from the plant entered the Harper residence basement.

1231.   That in 1975, DCE from the plant entered the Harper residence crawl spaces.

1232.   That in 1975, DCE from the plant entered the Harper residence home.

1233.   That in 1975, DCA from the plant entered the Harper residence basement.

1234.   That in 1975, DCA from the plant entered the Harper residence crawl spaces.

1235.   That in 1975, DCA from the plant entered the Harper residence home.

1236.   That in 1975, PCE from the plant entered the Harper residence basement.

1237.   That in 1975, PCE from the plant entered the Harper residence crawl spaces.

1238.   That in 1975, PCE from the plant entered the Harper residence home.

Received 06-24-2021 08:45 AM / Circuit Clerk Accepted on 06-24-2021 08:54 AM / Transaction #13796676 / Case #21LA000162
Page 84 of 289

1239.   In 1976, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1240.   In 1976, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1241.   In 1976, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1242.   In 1976, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1243.   In 1976, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1244.   In 1976, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1245.   In 1976, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1246.   In 1976, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1247.   In 1976, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1248.   In 1976, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1249.   In 1976, Techalloy purchased TCE for use at the plant.

1250.   In 1976, Techalloy purchased TCA for use at the plant.

1251.   In 1976, Techalloy purchased PCE for use at the plant.

1252.   In 1976, Techalloy purchased DCE for use at the plant.

1253.   In 1976, Techalloy purchased DCA for use at the plant.

1254.   In 1976, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

Received 06-24-2021 08:45 AM / Circuit Clerk Accepted on 06-24-2021 08:54 AM / Transaction #13796676 / Case #21LA000162
Page 85 of 289

1255.   In 1976, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1256.   In 1976, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1257.   In 1976, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1258.   In 1976, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1259.   In 1976, Techalloy disposed of TCE used at the plant.

1260.   In 1976, Techalloy was in control of disposing TCA at the plant.

1261.   In 1976, Techalloy was in control of disposing PCE at the plant.

1262.   In 1976, Techalloy was in control of disposing DCE at the plant.

1263.   In 1976, Techalloy was in control of disposing DCA at the plant.

1264.   In 1976, Techalloy designed an outdoor, concrete evaporation pad for TCE

1265.   In 1976, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1266.   In 1976, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1267.   In 1976, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1268.   In 1976, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1269.   In 1976, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1270.   That in 1976, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

86

1271.  That in 1976, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1272.  That in 1976, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1273.  That in 1976, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1274.  That in 1976, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1275.  That in 1976, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1276.  That in 1976, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1277.  That in 1976, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1278.  That in 1976, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1279.  That in 1976, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1280.  That in 1976, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1281.  That in 1976, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

87

1282.   That in 1976, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1283.   That in 1976, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1284.   That in 1976, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1285.   That in 1976, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1286.   That in 1976, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1287.   That in 1976, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1288.   That in 1976, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1289.   That in 1976, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1290.   That in 1976, TCE from the plant entered the air in Union, IL.

1291.   That in 1976, TCA from the plant entered the air in Union, IL.

1292.   That in 1976, DCE from the plant entered the air in Union, IL.

1293.   That in 1976, DCA from the plant entered the air in Union, IL.

1294.   That in 1976, PCE from the plant entered the air in Union, IL.

1295.   That in 1976, TCE from the plant entered the Harper residence basement.

1296.   That in 1976, TCE from the plant entered the Harper residence crawl spaces.

88

1297.  That in 1976, TCE from the plant entered the Harper residence home.

1298.  That in 1976, TCA from the plant entered the Harper residence basement.

1299.  That in 1976, TCA from the plant entered the Harper residence crawl spaces.

1300.  That in 1976, TCA from the plant entered the Harper residence home.

1301.  That in 1976, DCE from the plant entered the Harper residence basement.

1302.  That in 1976, DCE from the plant entered the Harper residence crawl spaces.

1303.  That in 1976, DCE from the plant entered the Harper residence home.

1304.  That in 1976, DCA from the plant entered the Harper residence basement.

1305.  That in 1976, DCA from the plant entered the Harper residence crawl spaces.

1306.  That in 1976, DCA from the plant entered the Harper residence home.

1307.  That in 1976, PCE from the plant entered the Harper residence basement.

1308.  That in 1976, PCE from the plant entered the Harper residence crawl spaces.

1309.  That in 1976, PCE from the plant entered the Harper residence home.

1310.  In 1977, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1311.  In 1977, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1312.  In 1977, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1313.  In 1977, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1314.  In 1977, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1315.  In 1977, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1316.  In 1977, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

89

1317. In 1977, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1318. In 1977, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1319. In 1977, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1320. In 1977, Techalloy purchased TCE for use at the plant.

1321. In 1977, Techalloy purchased TCA for use at the plant.

1322. In 1977, Techalloy purchased PCE for use at the plant.

1323. In 1977, Techalloy purchased DCE for use at the plant.

1324. In 1977, Techalloy purchased DCA for use at the plant.

1325. In 1977, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1326. In 1977, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1327. In 1977, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1328. In 1977, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1329. In 1977, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1330. In 1977, Techalloy disposed of TCE used at the plant.

1331. In 1977, Techalloy was in control of disposing TCA at the plant.

1332. In 1977, Techalloy was in control of disposing PCE at the plant.

1333. In 1977, Techalloy was in control of disposing DCE at the plant.

1334. In 1977, Techalloy was in control of disposing DCA at the plant.

1335. In 1977, Techalloy designed an outdoor, concrete evaporation pad for TCE

90

1336.   In 1977, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1337.   In 1977, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1338.   In 1977, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1339.   In 1977, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1340.   In 1977, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1341.   That in 1977, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1342.   That in 1977, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1343.   That in 1977, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1344.   That in 1977, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1345.   That in 1977, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1346.   That in 1977, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

Received 06-24-2021 08:45 AM / Circuit Clerk Accepted on 06-24-2021 08:54 AM / Transaction #13796676 / Case #21LA000162
Page 91 of 289

1347.    That in 1977, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1348.    That in 1977, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1349.    That in 1977, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1350.    That in 1977, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1351.    That in 1977, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1352.    That in 1977, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1353.    That in 1977, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1354.    That in 1977, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1355.    That in 1977, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1356.    That in 1977, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1357.    That in 1977, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

92

1358.   That in 1977, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1359.   That in 1977, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1360.   That in 1977, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1361.   That in 1977, TCE from the plant entered the air in Union, IL.

1362.   That in 1977, TCA from the plant entered the air in Union, IL.

1363.   That in 1977, DCE from the plant entered the air in Union, IL.

1364.   That in 1977, DCA from the plant entered the air in Union, IL.

1365.   That in 1977, PCE from the plant entered the air in Union, IL.

1366.   That in 1977, TCE from the plant entered the Harper residence basement.

1367.   That in 1977, TCE from the plant entered the Harper residence crawl spaces.

1368.   That in 1977, TCE from the plant entered the Harper residence home.

1369.   That in 1977, TCA from the plant entered the Harper residence basement.

1370.   That in 1977, TCA from the plant entered the Harper residence crawl spaces.

1371.   That in 1977, TCA from the plant entered the Harper residence home.

1372.   That in 1977, DCE from the plant entered the Harper residence basement.

1373.   That in 1977, DCE from the plant entered the Harper residence crawl spaces.

1374.   That in 1977, DCE from the plant entered the Harper residence home.

1375.   That in 1977, DCA from the plant entered the Harper residence basement.

1376.   That in 1977, DCA from the plant entered the Harper residence crawl spaces.

1377.   That in 1977, DCA from the plant entered the Harper residence home.

93

1378.   That in 1977, PCE from the plant entered the Harper residence basement.

1379.   That in 1977, PCE from the plant entered the Harper residence crawl spaces.

1380.   That in 1977, PCE from the plant entered the Harper residence home.

1381.   In 1978, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1382.   In 1978, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1383.   In 1978, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1384.   In 1978, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1385.   In 1978, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1386.   In 1978, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1387.   In 1978, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1388.   In 1978, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1389.   In 1978, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1390.   In 1978, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1391.   In 1978, Techalloy purchased TCE for use at the plant.

1392.   In 1978, Techalloy purchased TCA for use at the plant.

1393.   In 1978, Techalloy purchased PCE for use at the plant.

1394.   In 1978, Techalloy purchased DCE for use at the plant.

94

1395. In 1978, Techalloy purchased DCA for use at the plant.

1396. In 1978, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1397. In 1978, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1398. In 1978, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1399. In 1978, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1400. In 1978, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1401. In 1978, Techalloy disposed of TCE used at the plant.

1402. In 1978, Techalloy was in control of disposing TCA at the plant.

1403. In 1978, Techalloy was in control of disposing PCE at the plant.

1404. In 1978, Techalloy was in control of disposing DCE at the plant.

1405. In 1978, Techalloy was in control of disposing DCA at the plant.

1406. In 1978, Techalloy designed an outdoor, concrete evaporation pad for TCE

1407. In 1978, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1408. In 1978, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1409. In 1978, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1410. In 1978, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1411. In 1978, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

95

1412. That in 1978, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1413. That in 1978, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1414. That in 1978, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1415. That in 1978, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1416. That in 1978, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1417. That in 1978, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1418. That in 1978, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1419. That in 1978, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1420. That in 1978, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1421. That in 1978, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1422. That in 1978, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

96

1423.   That in 1978, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1424.   That in 1978, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1425.   That in 1978, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1426.   That in 1978, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1427.   That in 1978, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1428.   That in 1978, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1429.   That in 1978, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1430.   That in 1978, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1431.   That in 1978, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1432.   That in 1978, TCE from the plant from the plant entered the air in Union, IL.

1433.   That in 1978, TCA from the plant from the plant entered the air in Union, IL.

1434.   That in 1978, DCE from the plant from the plant entered the air in Union, IL.

1435.   That in 1978, DCA from the plant from the plant entered the air in Union, IL.

1436.   That in 1978, PCE from the plant from the plant entered the air in Union, IL.

97

1437.   That in 1978, TCE from the plant from the plant entered the Harper residence basement.

1438.   That in 1978, TCE from the plant from the plant entered the Harper residence crawl spaces.

1439.   That in 1978, TCE from the plant from the plant entered the Harper residence home.

1440.   That in 1978, TCA from the plant from the plant entered the Harper residence basement.

1441.   That in 1978, TCA from the plant from the plant entered the Harper residence crawl spaces.

1442.   That in 1978, TCA from the plant from the plant entered the Harper residence home.

1443.   That in 1978, DCE from the plant from the plant entered the Harper residence basement.

1444.   That in 1978, DCE from the plant entered the Harper residence crawl spaces.

1445.   That in 1978, DCE from the plant entered the Harper residence home.

1446.   That in 1978, DCA from the plant entered the Harper residence basement.

1447.   That in 1978, DCA from the plant entered the Harper residence crawl spaces.

1448.   That in 1978, DCA from the plant entered the Harper residence home.

1449.   That in 1978, PCE from the plant entered the Harper residence basement.

1450.   That in 1978, PCE from the plant entered the Harper residence crawl spaces.

1451.   That in 1978, PCE from the plant entered the Harper residence home.

Received 06-24-2021 08:45 AM / Circuit Clerk Accepted on 06-24-2021 08:54 AM / Transaction #13796676 / Case #21LA000162
Page 98 of 289

1452.  In 1979, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1453.  In 1979, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1454.  In 1979, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1455.  In 1979, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1456.  In 1979, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1457.  In 1979, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1458.  In 1979, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1459.  In 1979, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1460.  In 1979, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1461.  In 1979, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1462.  In 1979, Techalloy purchased TCE for use at the plant.

1463.  In 1979, Techalloy purchased TCA for use at the plant.

1464.  In 1979, Techalloy purchased PCE for use at the plant.

1465.  In 1979, Techalloy purchased DCE for use at the plant.

1466.  In 1979, Techalloy purchased DCA for use at the plant.

1467.  In 1979, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

99

1468.   In 1979, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1469.   In 1979, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1470.   In 1979, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1471.   In 1979, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1472.   In 1979, Techalloy disposed of TCE used at the plant.

1473.   In 1979, Techalloy was in control of disposing TCA at the plant.

1474.   In 1979, Techalloy was in control of disposing PCE at the plant.

1475.   In 1979, Techalloy was in control of disposing DCE at the plant.

1476.   In 1979, Techalloy was in control of disposing DCA at the plant.

1477.   In 1979, Techalloy designed an outdoor, concrete evaporation pad for TCE

1478.   In 1979, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1479.   In 1979, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1480.   In 1979, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1481.   In 1979, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1482.   In 1979, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1483.   That in 1979, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

100

1484.   That in 1979, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1485.   That in 1979, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1486.   That in 1979, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1487.   That in 1979, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1488.   That in 1979, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1489.   That in 1979, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1490.   That in 1979, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1491.   That in 1979, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1492.   That in 1979, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1493.   That in 1979, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1494.   That in 1979, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

101

1495.   That in 1979, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1496.   That in 1979, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1497.   That in 1979, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1498.   That in 1979, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1499.   That in 1979, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1500.   That in 1979, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1501.   That in 1979, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1502.   That in 1979, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1503.   That in 1979, TCE from the plant entered the air in Union, IL.

1504.   That in 1979, TCA from the plant entered the air in Union, IL.

1505.   That in 1979, DCE from the plant entered the air in Union, IL.

1506.   That in 1979, DCA from the plant entered the air in Union, IL.

1507.   That in 1979, PCE from the plant entered the air in Union, IL.

1508.   That in 1979, TCE from the plant entered the Harper residence basement.

1509.   That in 1979, TCE from the plant entered the Harper residence crawl spaces.

102

1510. That in 1979, TCE from the plant entered the Harper residence home.

1511. That in 1979, TCA from the plant entered the Harper residence basement.

1512. That in 1979, TCA from the plant entered the Harper residence crawl spaces.

1513. That in 1979, TCA from the plant entered the Harper residence home.

1514. That in 1979, DCE from the plant entered the Harper residence basement.

1515. That in 1979, DCE from the plant entered the Harper residence crawl spaces.

1516. That in 1979, DCE from the plant entered the Harper residence home.

1517. That in 1979, DCA from the plant entered the Harper residence basement.

1518. That in 1979, DCA from the plant entered the Harper residence crawl spaces.

1519. That in 1979, DCA from the plant entered the Harper residence home.

1520. That in 1979, PCE from the plant entered the Harper residence basement.

1521. That in 1979, PCE from the plant entered the Harper residence crawl spaces.

1522. That in 1979, PCE from the plant entered the Harper residence home.

1523. In 1980, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1524. In 1980, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1525. In 1980, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1526. In 1980, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1527. In 1980, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1528. In 1980, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1529. In 1980, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

103

1530.   In 1980, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1531.   In 1980, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1532.   In 1980, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1533.   In 1980, Techalloy purchased TCE for use at the plant.

1534.   In 1980, Techalloy purchased TCA for use at the plant.

1535.   In 1980, Techalloy purchased PCE for use at the plant.

1536.   In 1980, Techalloy purchased DCE for use at the plant.

1537.   In 1980, Techalloy purchased DCA for use at the plant.

1538.   In 1980, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1539.   In 1980, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1540.   In 1980, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1541.   In 1980, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1542.   In 1980, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1543.   In 1980, Techalloy disposed of TCE used at the plant.

1544.   In 1980, Techalloy was in control of disposing TCA at the plant.

1545.   In 1980, Techalloy was in control of disposing PCE at the plant.

1546.   In 1980, Techalloy was in control of disposing DCE at the plant.

1547.   In 1980, Techalloy was in control of disposing DCA at the plant.

1548.   In 1980, Techalloy designed an outdoor, concrete evaporation pad for TCE

104

1549.   In 1980, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1550.   In 1980, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1551.   In 1980, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1552.   In 1980, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1553.   In 1980, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1554.   That in 1980, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1555.   That in 1980, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1556.   That in 1980, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1557.   That in 1980, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1558.   That in 1980, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1559.   That in 1980, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

105

1560.   That in 1980, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1561.   That in 1980, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1562.   That in 1980, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1563.   That in 1980, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1564.   That in 1980, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1565.   That in 1980, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1566.   That in 1980, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1567.   That in 1980, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1568.   That in 1980, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1569.   That in 1980, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1570.   That in 1980, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

106

1571. That in 1980, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1572. That in 1980, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1573. That in 1980, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1574. That in 1980, TCE from the plant entered the air in Union, IL.

1575. That in 1980, TCA from the plant entered the air in Union, IL.

1576. That in 1980, DCE from the plant entered the air in Union, IL.

1577. That in 1980, DCA from the plant entered the air in Union, IL.

1578. That in 1980, PCE from the plant entered the air in Union, IL.

1579. That in 1980, TCE from the plant entered the Harper residence basement.

1580. That in 1980, TCE from the plant entered the Harper residence crawl spaces.

1581. That in 1980, TCE from the plant entered the Harper residence home.

1582. That in 1980, TCA from the plant entered the Harper residence basement.

1583. That in 1980, TCA from the plant entered the Harper residence crawl spaces.

1584. That in 1980, TCA from the plant entered the Harper residence home.

1585. That in 1980, DCE from the plant entered the Harper residence basement.

1586. That in 1980, DCE from the plant entered the Harper residence crawl spaces.

1587. That in 1980, DCE from the plant entered the Harper residence home.

1588. That in 1980, DCA from the plant entered the Harper residence basement.

1589. That in 1980, DCA from the plant entered the Harper residence crawl spaces.

1590. That in 1980, DCA from the plant entered the Harper residence home.

107

1591. That in 1980, PCE from the plant entered the Harper residence basement.

1592. That in 1980, PCE from the plant entered the Harper residence crawl spaces.

1593. That in 1980, PCE from the plant entered the Harper residence home.

1594. In 1981, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1595. In 1981, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1596. In 1981, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1597. In 1981, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1598. In 1981, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1599. In 1981, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1600. In 1981, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1601. In 1981, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1602. In 1981, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1603. In 1981, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1604. In 1981, Techalloy purchased TCE for use at the plant.

1605. In 1981, Techalloy purchased TCA for use at the plant.

1606. In 1981, Techalloy purchased PCE for use at the plant.

1607. In 1981, Techalloy purchased DCE for use at the plant.

108

1608.   In 1981, Techalloy purchased DCA for use at the plant.

1609.   In 1981, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1610.   In 1981, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1611.   In 1981, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1612.   In 1981, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1613.   In 1981, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1614.   In 1981, Techalloy disposed of TCE used at the plant.

1615.   In 1981, Techalloy was in control of disposing TCA at the plant.

1616.   In 1981, Techalloy was in control of disposing PCE at the plant.

1617.   In 1981, Techalloy was in control of disposing DCE at the plant.

1618.   In 1981, Techalloy was in control of disposing DCA at the plant.

1619.   In 1981, Techalloy designed an outdoor, concrete evaporation pad for TCE

1620.   In 1981, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1621.   In 1981, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1622.   In 1981, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1623.   In 1981, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1624.   In 1981, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

109

1625.   That in 1981, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1626.   That in 1981, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1627.   That in 1981, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1628.   That in 1981, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1629.   That in 1981, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1630.   That in 1981, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1631.   That in 1981, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1632.   That in 1981, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1633.   That in 1981, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1634.   That in 1981, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1635.   That in 1981, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

110

1636.   That in 1981, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1637.   That in 1981, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1638.   That in 1981, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1639.   That in 1981, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1640.   That in 1981, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1641.   That in 1981, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1642.   That in 1981, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1643.   That in 1981, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1644.   That in 1981, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1645.   That in 1981, TCE from the plant entered the air in Union, IL.

1646.   That in 1981, TCA from the plant entered the air in Union, IL.

1647.   That in 1981, DCE from the plant entered the air in Union, IL.

1648.   That in 1981, DCA from the plant entered the air in Union, IL.

1649.   That in 1981, PCE from the plant entered the air in Union, IL.

111

1650.   That in 1981, TCE from the plant entered the Harper residence basement.

1651.   That in 1981, TCE from the plant entered the Harper residence crawl spaces.

1652.   That in 1981, TCE from the plant entered the Harper residence home.

1653.   That in 1981, TCA from the plant entered the Harper residence basement.

1654.   That in 1981, TCA from the plant entered the Harper residence crawl spaces.

1655.   That in 1981, TCA from the plant entered the Harper residence home.

1656.   That in 1981, DCE from the plant entered the Harper residence basement.

1657.   That in 1981, DCE from the plant entered the Harper residence crawl spaces.

1658.   That in 1981, DCE from the plant entered the Harper residence home.

1659.   That in 1981, DCA from the plant entered the Harper residence basement.

1660.   That in 1981, DCA from the plant entered the Harper residence crawl spaces.

1661.   That in 1981, DCA from the plant entered the Harper residence home.

1662.   That in 1981, PCE from the plant entered the Harper residence basement.

1663.   That in 1981, PCE from the plant entered the Harper residence crawl spaces.

1664.   That in 1981, PCE from the plant entered the Harper residence home.

1665.   In 1982, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1666.   In 1982, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1667.   In 1982, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1668.   In 1982, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1669.   In 1982, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1670.   In 1982, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

112

1671.  In 1982, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1672.  In 1982, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1673.  In 1982, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1674.  In 1982, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1675.  In 1982, Techalloy purchased TCE for use at the plant.

1676.  In 1982, Techalloy purchased TCA for use at the plant.

1677.  In 1982, Techalloy purchased PCE for use at the plant.

1678.  In 1982, Techalloy purchased DCE for use at the plant.

1679.  In 1982, Techalloy purchased DCA for use at the plant.

1680.  In 1982, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1681.  In 1982, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1682.  In 1982, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1683.  In 1982, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1684.  In 1982, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1685.  In 1982, Techalloy disposed of TCE used at the plant.

1686.  In 1982, Techalloy was in control of disposing TCA at the plant.

1687.  In 1982, Techalloy was in control of disposing PCE at the plant.

1688.  In 1982, Techalloy was in control of disposing DCE at the plant.

113

1689.   In 1982, Techalloy was in control of disposing DCA at the plant.

1690.   In 1982, Techalloy designed an outdoor, concrete evaporation pad for TCE

1691.   In 1982, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1692.   In 1982, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1693.   In 1982, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1694.   In 1982, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1695.   In 1982, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1696.   That in 1982, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1697.   That in 1982, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1698.   That in 1982, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1699.   That in 1982, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1700.   That in 1982, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

114

1701.   That in 1982, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1702.   That in 1982, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1703.   That in 1982, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1704.   That in 1982, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1705.   That in 1982, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1706.   That in 1982, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1707.   That in 1982, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1708.   That in 1982, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1709.   That in 1982, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1710.   That in 1982, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1711.   That in 1982, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

115

1712.   That in 1982, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1713.   That in 1982, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1714.   That in 1982, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1715.   That in 1982, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1716.   That in 1982, TCE from the plant entered the air in Union, IL.

1717.   That in 1982, TCA from the plant entered the air in Union, IL.

1718.   That in 1982, DCE from the plant entered the air in Union, IL.

1719.   That in 1982, DCA from the plant entered the air in Union, IL.

1720.   That in 1982, PCE from the plant entered the air in Union, IL.

1721.   That in 1982, TCE from the plant entered the Harper residence basement.

1722.   That in 1982, TCE from the plant entered the Harper residence crawl spaces.

1723.   That in 1982, TCE from the plant entered the Harper residence home.

1724.   That in 1982, TCA from the plant entered the Harper residence basement.

1725.   That in 1982, TCA from the plant entered the Harper residence crawl spaces.

1726.   That in 1982, TCA from the plant entered the Harper residence home.

1727.   That in 1982, DCE from the plant entered the Harper residence basement.

1728.   That in 1982, DCE from the plant entered the Harper residence crawl spaces.

1729.   That in 1982, DCE from the plant entered the Harper residence home.

1730.   That in 1982, DCA from the plant entered the Harper residence basement.

116

1731.   That in 1982, DCA from the plant entered the Harper residence crawl spaces.

1732.   That in 1982, DCA from the plant entered the Harper residence home.

1733.   That in 1982, PCE from the plant entered the Harper residence basement.

1734.   That in 1982, PCE from the plant entered the Harper residence crawl spaces.

1735.   That in 1982, PCE from the plant entered the Harper residence home.

1736.   In 1983, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1737.   In 1983, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1738.   In 1983, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1739.   In 1983, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1740.   In 1983, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1741.   In 1983, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1742.   In 1983, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1743.   In 1983, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1744.   In 1983, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1745.   In 1983, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1746.   In 1983, Techalloy purchased TCE for use at the plant.

1747.   In 1983, Techalloy purchased TCA for use at the plant.

117

1748.   In 1983, Techalloy purchased PCE for use at the plant.

1749.   In 1983, Techalloy purchased DCE for use at the plant.

1750.   In 1983, Techalloy purchased DCA for use at the plant.

1751.   In 1983, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1752.   In 1983, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1753.   In 1983, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1754.   In 1983, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1755.   In 1983, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1756.   In 1983, Techalloy disposed of TCE used at the plant.

1757.   In 1983, Techalloy was in control of disposing TCA at the plant.

1758.   In 1983, Techalloy was in control of disposing PCE at the plant.

1759.   In 1983, Techalloy was in control of disposing DCE at the plant.

1760.   In 1983, Techalloy was in control of disposing DCA at the plant.

1761.   In 1983, Techalloy designed an outdoor, concrete evaporation pad for TCE

1762.   In 1983, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1763.   In 1983, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1764.   In 1983, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1765.   In 1983, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

118

1766.   In 1983, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1767.   That in 1983, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1768.   That in 1983, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1769.   That in 1983, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1770.   That in 1983, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1771.   That in 1983, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1772.   That in 1983, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1773.   That in 1983, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1774.   That in 1983, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1775.   That in 1983, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1776.   That in 1983, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

119

1777.   That in 1983, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1778.   That in 1983, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1779.   That in 1983, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1780.   That in 1983, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1781.   That in 1983, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1782.   That in 1983, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1783.   That in 1983, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1784.   That in 1983, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1785.   That in 1983, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1786.   That in 1983, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1787.   That in 1983, TCE from the plant entered the air in Union, IL.

1788.   That in 1983, TCA from the plant entered the air in Union, IL.

1789.   That in 1983, DCE from the plant entered the air in Union, IL.

120

1790. That in 1983, DCA from the plant entered the air in Union, IL.

1791. That in 1983, PCE from the plant entered the air in Union, IL.

1792. That in 1983, TCE from the plant entered the Harper residence basement.

1793. That in 1983, TCE from the plant entered the Harper residence crawl spaces.

1794. That in 1983, TCE from the plant entered the Harper residence home.

1795. That in 1983, TCA from the plant entered the Harper residence basement.

1796. That in 1983, TCA from the plant entered the Harper residence crawl spaces.

1797. That in 1983, TCA from the plant entered the Harper residence home.

1798. That in 1983, DCE from the plant entered the Harper residence basement.

1799. That in 1983, DCE from the plant entered the Harper residence crawl spaces.

1800. That in 1983, DCE from the plant entered the Harper residence home.

1801. That in 1983, DCA from the plant entered the Harper residence basement.

1802. That in 1983, DCA from the plant entered the Harper residence crawl spaces.

1803. That in 1983, DCA from the plant entered the Harper residence home.

1804. That in 1983, PCE from the plant entered the Harper residence basement.

1805. That in 1983, PCE from the plant entered the Harper residence crawl spaces.

1806. That in 1983, PCE from the plant entered the Harper residence home.

1807. In 1984, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1808. In 1984, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1809. In 1984, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1810. In 1984, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1811. In 1984, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

121

1812.   In 1984, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1813.   In 1984, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1814.   In 1984, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1815.   In 1984, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1816.   In 1984, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1817.   In 1984, Techalloy purchased TCE for use at the plant.

1818.   In 1984, Techalloy purchased TCA for use at the plant.

1819.   In 1984, Techalloy purchased PCE for use at the plant.

1820.   In 1984, Techalloy purchased DCE for use at the plant.

1821.   In 1984, Techalloy purchased DCA for use at the plant.

1822.   In 1984, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1823.   In 1984, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1824.   In 1984, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1825.   In 1984, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1826.   In 1984, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1827.   In 1984, Techalloy disposed of TCE used at the plant.

1828.   In 1984, Techalloy was in control of disposing TCA at the plant.

122

1829.   In 1984, Techalloy was in control of disposing PCE at the plant.

1830.   In 1984, Techalloy was in control of disposing DCE at the plant.

1831.   In 1984, Techalloy was in control of disposing DCA at the plant.

1832.   In 1984, Techalloy designed an outdoor, concrete evaporation pad for TCE

1833.   In 1984, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1834.   In 1984, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1835.   In 1984, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1836.   In 1984, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1837.   In 1984, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1838.   That in 1984, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1839.   That in 1984, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1840.   That in 1984, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1841.   That in 1984, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

123

1842. That in 1984, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1843. That in 1984, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1844. That in 1984, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1845. That in 1984, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1846. That in 1984, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1847. That in 1984, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1848. That in 1984, TCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1849. That in 1984, TCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1850. That in 1984, PCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1851. That in 1984, DCE from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

1852. That in 1984, DCA from the plant entered the Harper residence located at 17317 E. Johnson St, Union, IL.

124

1853.   That in 1984, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1854.   That in 1984, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1855.   That in 1984, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1856.   That in 1984, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1857.   That in 1984, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1858.   That in 1984, TCE from the plant entered the air in Union, IL.

1859.   That in 1984, TCA from the plant entered the air in Union, IL.

1860.   That in 1984, DCE from the plant entered the air in Union, IL.

1861.   That in 1984, DCA from the plant entered the air in Union, IL.

1862.   That in 1984, PCE from the plant entered the air in Union, IL.

1863.   That in 1984, TCE from the plant entered the Harper residence basement.

1864.   That in 1984, TCE from the plant entered the Harper residence crawl spaces.

1865.   That in 1984, TCE from the plant entered the Harper residence home.

1866.   That in 1984, TCA from the plant entered the Harper residence basement.

1867.   That in 1984, TCA from the plant entered the Harper residence crawl spaces.

1868.   That in 1984, TCA from the plant entered the Harper residence home.

1869.   That in 1984, DCE from the plant entered the Harper residence basement.

1870.   That in 1984, DCE from the plant entered the Harper residence crawl spaces.

125

1871.   That in 1984, DCE from the plant entered the Harper residence home.

1872.   That in 1984, DCA from the plant entered the Harper residence basement.

1873.   That in 1984, DCA from the plant entered the Harper residence crawl spaces.

1874.   That in 1984, DCA from the plant entered the Harper residence home.

1875.   That in 1984, PCE from the plant entered the Harper residence basement.

1876.   That in 1984, PCE from the plant entered the Harper residence crawl spaces.

1877.   That in 1984, PCE from the plant entered the Harper residence home.

1878.   That from 1984 to the present, Techalloy and Central Wire have continuously operated the factory at 6509 Olson Rd, Union, IL.

1879.    That from 1984 to the present, Techalloy and Central Wire have continuously operated the facility at 6509 Olson Rd, Union, IL.

## COUNT I - SUCCESSOR-IN-INTEREST LIABILITY
### *Dana Harper v.  Central Wire Industries, Ltd. As Successor-In-Interest to Central Wire, Inc.*

1880.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

1881.   As of February 8, 2005, Central Wire Industries, Ltd. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

1882.   Upon information and belief, on or around February 8, 2005, Central Wire Industries, Ltd., acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

1883.   Central Wire Industries, Ltd.'s status as parent company to Central Wire, Inc. makes Central Wire Industries, Ltd. a current operator of the facility located at 6509 Olson Road, Union, Illinois.

126

1884.   That in 2005, Central Wire Industries, Ltd., is in the business of manufacturing industrial metal and wire products.

1885.   That in 2005, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

1886.   Upon information and belief, Central Wire Industries, Ltd. employs several of the same high-level employees that Central Wire, Inc employed.

1887.   Central Wire Industries, Ltd. is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

1888.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. transferred assets related to its business to Central Wire Industries, Ltd.

1889.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. transferred equipment related to its business to Central Wire Industries, Ltd.

1890.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. assigned contracts related to its business to Central Wire Industries, Ltd.

1891.   Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

1892.   Central Wire Industries, Ltd. is a successor-in-interest to Central Wire, Inc.

1893.   Central Wire Industries, Ltd., a successor-in-interest to Central Wire, Inc., is liable to Dana Harper for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

1894.   WHEREFORE, Plaintiff, Dana Harper prays for a judgment against Defendant CENTRAL WIRE INDUSTRIES, LTD. in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

127

## COUNT II – JOINT VENTURE

*Dana Harper v. Central Wire Industries, Ltd.'s Liability for Being Joint Venture with Central Wire, Inc.*

1895.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

1896.   As of February 8, 2005, Central Wire Industries, Ltd. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

1897.   Upon information and belief, on or after February 8, 2005, Central Wire Industries, Ltd. distributed products by made Central Wire, Inc.

1898.   Upon information and belief, on or after February 8, 2005, one of Central Wire Industries, Ltd.'s places of business was at 6509 Olson Road, Union, Illinois, the plant where Central Wire, Inc. is located.

1899.   Central Wire Industries, Ltd. is an international company who specializes in high performance specialty alloys in nickel, stainless and red metal.

1900.   Central Wire Industries, Ltd. is in the business of manufacturing industrial metal and wire products, the same business in which Central Wire, Inc. engaged in.

1901.   Upon information and belief, Central Wire Industries, Ltd. employs several of the same high-level employees that Central Wire, Inc employed.

1902.   This agreement between Central Wire Industries, Ltd. and Central Wire, Inc. to manufacture and distribute goods created a single enterprise.

1903.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. and Central Wire, Inc. had a common interest in this single enterprise in that both entities shared in profits and losses based on the volume of product

128

manufactured by Central Wire, Inc. which could then be distributed by Central Wire Industries, Ltd.

1904. Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. and Central Wire, Inc. each had an expectation to share in the profits of the aforementioned single enterprise.

1905. Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. and Central Wire, Inc. each had a duty to share in the profits and losses of the aforementioned single enterprise.

1906. Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. had the right to dictate the amount of product Central Wire, Inc. manufactured.

1907. Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. had the right to dictate the type of product Central Wire, Inc. manufactured.

1908. Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. had the right to help develop the product that Central Wire, Inc. manufactured.

1909. Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. had the right to govern the conduct of Central Wire, Inc.

1910. Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate the amount of product that Central Wire Industries, Ltd. distributed.

129

1911.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate to whom Central Wire Industries, Ltd. distributed its product.

1912.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate the method in which Central Wire Industries, Ltd. distributed its product.

1913.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had a right to govern the conduct of Central Wire Industries, Ltd.

1914.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. was a joint venturer in the joint venture between Central Wire, Inc. and Central Wire Industries, Ltd.

1915.   Central Wire, Inc. was a joint venturer in the joint venture between Central Wire, Inc. and Central Wire Industries, Ltd.

1916.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. and Central Wire Industries, Ltd. carried on a single enterprise described herein for profit.

1917.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. and Central Wire Industries, Ltd. was in fact a joint venture.

1918.   Because Central Wire Industries, Ltd. and Central Wire, Inc. were engaged in a joint venture, Central Wire Industries, Ltd. is liable to Dana Harper for the debts and liabilities of Central Wire, Inc, including any and all judgments rendered against Central Wire, Inc. pursuant to this Complaint at law.

130

WHEREFORE, Plaintiff, Dana Harper prays for a judgment against Defendant Central Wire Industries, Ltd. in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT III – ALTER EGO
### *Dana Harper v. Central Wire Industries, Ltd. As Being Alter Ego to Central Wire, Inc.*

1919.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

1920.   As of February 8, 2005, Central Wire Industries, Ltd. was a corporation organized under the laws of Delaware, and doing business in the state of Illinois.

1921.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. distributed products made by Central Wire, Inc.

1922.   That in 2005, Central Wire Industries, Ltd., is in the business of manufacturing industrial metal and wire products.

1923.   That in 2005, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

1924.   Upon information and belief, Central Wire Industries, Ltd. employs several of the same high-level employees that Central Wire, Inc employed.

1925.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. used Central Wire, Inc. to procure labor.

1926.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. used Central Wire, Inc. to procure services.

1927.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. was used as a conduit for Central Wire, Inc.

131

1928.   Upon information and belief, on or after February 8, 2005, and at all relevant times, the funds of Central Wire Industries, Ltd. were commingled with the funds of Central Wire, Inc.

1929.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd.'s equitable ownership was predominantly the same as the equitable ownership of Central Wire, Inc.

1930.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. was undercapitalized in relation to Central Wire, Inc.

1931.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. failed to maintain adequate meeting minutes.

1932.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. failed to maintain adequate business records.

1933.   Upon information and belief, on or after February 8, 2005, and at all relevant times, the same individuals who oversaw Central Wire Industries, Ltd.'s operation oversaw Central Wire, Inc.'s operation.

1934.   Upon information and belief, on or after February 8, 2005, and at all relevant times, the same individuals who oversaw Central Wire Industries, Ltd.'s operation managed Central Wire, Inc.'s operation.

1935.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. maintained complete control over Central Wire, Inc.

1936.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. treated the assets of Central Wire, Inc. as its own.

132

1937.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. failed to maintain an arm's length relationship between Central Wire, Inc. and its own personal business.

1938.   Central Wire, Inc. is a mere alter ego to Defendant, Central Wire Industries, Ltd.

1939.   Because Central Wire, Inc. is a mere alter-ego of Central Wire Industries, Ltd., Central Wire Industries, Ltd. is liable to Dana Harper for the debts and liabilities of Central Wire, Inc., including any and all judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

WHEREFORE, Plaintiff, Dana Harper prays for a judgment against Defendant CENTRAL WIRE INDUSTRIES, LTD. in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

<u>COUNT IV – NEGLIGENCE</u>
*Dana Harper v. Central Wire Industries, Ltd.*

1940.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

1941.   At all times relevant, it was the duty of the Defendant, Central Wire Industries Ltd., owed a duty of ordinary care to Dana Harper in providing a reasonably safe environment for Dana to live.

1942.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

   b.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   c.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

133

      d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

      e.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

1943.  As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

1944.  As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

1945.  As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

1946.  As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

1947.  That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

134

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT V – SUCCESOR IN INTEREST LIABILITY
### Dana Harper v. CWI Holding Inc. As Successor-In-Interest to Central Wire, Inc.

1948.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

1949.   As of February 8, 2005, CWI Holding Inc. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

1950.   Upon information and belief, on or around February 8, 2005, CWI Holding Inc., acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

1951.   CWI Holding Inc.'s status as parent company to Central Wire, Inc. makes CWI Holding Inc. a current operator of the facility located at 6509 Olson Road, Union, Illinois.

1952.   That in 2005, CWI Holding, Inc., is in the business of manufacturing industrial metal and wire products.

1953.   That in 2005, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

1954.   Upon information and belief, CWI Holding Inc. employs several of the same high-level employees that Central Wire, Inc employed.

1955.   CWI Holding Inc. is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

1956.   Upon information and belief, on or after February 8, 2005 Central Wire, Inc. transferred assets related to its business to CWI Holding Inc.

135

1957.   Upon information and belief, on or after February 8, 2005 Central Wire, Inc. transferred equipment related to its business to CWI Holding Inc.

1958.   Upon information and belief, on or after February 8, 2005 Central Wire, Inc. assigned contracts related to its business to CWI Holding Inc.

1959.   Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

1960.   CWI Holding Inc. is a successor-in-interest to Central Wire, Inc.

1961.   CWI Holding Inc., a successor-in-interest to Central Wire, Inc., is liable to Dana Harper for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

1962.   WHEREFORE, Plaintiff, Dana Harper prays for a judgment against Defendant CWI HOLDING INC. in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## <u>COUNT VI- JOINT VENTURE</u>
### *Dana Harper v. CWI Holding Inc.'s Liability for Being Joint Venture with Central Wire, Inc.*

1963.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

1964.   As of February 8, 2005, CWI Holding Inc. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

1965.   Upon information and belief, on or after February 8, 2005 CWI Holding Inc. distributed products by made Central Wire, Inc.

1966.   Upon information and belief, on or after February 8, 2005 one of CWI Holding Inc.'s places of business was at 6509 Olson Road, Union, Illinois, the plant where Central Wire, Inc. is located.

136

1967.   CWI Holding Inc. is an international company who specializes in high performance specialty alloys in nickel, stainless and red metal.

1968.   CWI Holding Inc. is in the business of manufacturing industrial metal and wire products, the same business in which Central Wire, Inc. engaged in.

1969.   Upon information and belief, CWI Holding Inc. employs several of the same high-level employees that Central Wire, Inc employed.

1970.   This agreement between CWI Holding Inc. and Central Wire, Inc. to manufacture and distribute goods created a single enterprise.

1971.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. and Central Wire, Inc. had a common interest in this single enterprise in that both entities shared in profits and losses based on the volume of product manufactured by Central Wire, Inc. which could then be distributed by CWI Holding Inc.

1972.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. and Central Wire, Inc. each had an expectation to share in the profits of the aforementioned single enterprise.

1973.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. and Central Wire, Inc. each had a duty to share in the profits and losses of the aforementioned single enterprise.

1974.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. had the right to dictate the amount of product Central Wire, Inc. manufactured.

137

1975.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. had the right to dictate the type of product Central Wire, Inc. manufactured.

1976.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. had the right to help develop the product that Central Wire, Inc. manufactured.

1977.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. had the right to govern the conduct of Central Wire, Inc.

1978.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate the amount of product that CWI Holding Inc. distributed.

1979.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate to whom CWI Holding Inc. distributed its product.

1980.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate the method in which CWI Holding Inc. distributed its product.

1981.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had a right to govern the conduct of CWI Holding Inc.

1982.   Upon information and belief, on or after February 8, 2005 and at all relevant times, CWI Holding Inc. was a joint venturer in the joint venture between Central Wire, Inc. and CWI Holding Inc.

138

1983.   Central Wire, Inc. was a joint venturer in the joint venture between Central Wire, Inc. and CWI Holding Inc.

1984.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. and CWI Holding Inc. carried on a single enterprise described herein for profit.

1985.   Upon information and belief, on or after February 8, 2005 and at all relevant times, Central Wire Inc. and CWI Holding Inc. was in fact a joint venture.

1986.   Because CWI Holding Inc. and Central Wire, Inc. were engaged in a joint venture, CWI Holding Inc. is liable to Dana Harper for the debts and liabilities of Central Wire, Inc, including any and all judgments rendered against Central Wire, Inc. pursuant to this Complaint at law.

WHEREFORE, Plaintiff, Dana Harper prays for a judgment against Defendant CWI Holding Inc. in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT VII – ALTER EGO
*Dana Harper v. CWI Holding Inc. As Being Alter Ego to Central Wire, Inc.*

1987.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs  1 through 1879, above as fully stated herein.

1988.   As of February 8, 2005, CWI Holding Inc. was a corporation organized under the laws of Delaware, and doing business in the state of Illinois.

1989.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. distributed products made by Central Wire, Inc.

1990.   That in 2005, CWI Holding, Inc., is in the business of manufacturing industrial metal and wire products.

139

1991.   That in 2005, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

1992.   Upon information and belief, CWI Holding Inc. employs several of the same high-level employees that Central Wire, Inc employed.

1993.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. used Central Wire, Inc. to procure labor.

1994.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. used Central Wire, Inc. to procure services.

1995.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. was used as a conduit for Central Wire, Inc.

1996.   Upon information and belief, on or after February 8, 2005, and at all relevant times, the funds of CWI Holding Inc. were commingled with the funds of Central Wire, Inc.

1997.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc.'s equitable ownership was predominantly the same as the equitable ownership of Central Wire, Inc.

1998.   Upon information and belief, on or after February 8, 2005 and at all relevant times, CWI Holding Inc. was undercapitalized in relation to Central Wire, Inc.

1999.   Upon information and belief, on or after February 8, 2005 and at all relevant times, CWI Holding Inc. failed to maintain adequate meeting minutes.

2000.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. failed to maintain adequate business records.

140

2001.   Upon information and belief, on or after February 8, 2005, and at all relevant times, the same individuals who oversaw CWI Holding Inc.'s operation oversaw Central Wire, Inc.'s operation.

2002.   Upon information and belief, on or after February 8, 2005, and at all relevant times, the same individuals who oversaw CWI Holding Inc.'s operation managed Central Wire, Inc.'s operation.

2003.   Upon information and belief, on or after February 8, 2005 and at all relevant times, CWI Holding Inc. maintained complete control over Central Wire, Inc.

2004.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. treated the assets of Central Wire, Inc. as its own.

2005.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. failed to maintain an arm's length relationship between Central Wire, Inc. and its own personal business.

2006.   Central Wire, Inc. is a mere alter ego to Defendant, CWI Holding Inc.

2007.   Because Central Wire, Inc. is a mere alter-ego of CWI Holding Inc., CWI Holding Inc. is liable to Dana Harper for the debts and liabilities of Central Wire, Inc., including any and all judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

WHEREFORE, Plaintiff, Dana Harper prays for a judgment against Defendant CWI HOLDING INC. in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT VIII – NEGLIGENCE
### *Dana Harper v. CWI Holding Inc.*

2008.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

141

2009.    At all times relevant, it was the duty of the Defendant, CWI Holding, Inc., owed a duty of ordinary care to Dana Harper.

2010.    The Defendant committed one or more of the following acts and/or omissions:

a.    Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

b.    Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

c.    Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

d.    Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

e.    Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2011.    As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

2012.    As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

2013.    As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

142

2014.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2015.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT IX – SUCCESSOR IN INTEREST LIABILITY
### Dana Harper v. Lincoln Electric Holdings, Inc. As Successor-In-Interest to Central Wire, Inc.

2016.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2017.   As of July 29, 2011, Lincoln Electric Holdings, Inc. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2018.   Upon information and belief, on or around July 29, 2011, Lincoln Electric Holdings, Inc., acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2019.   Lincoln Electric Holdings, Inc.'s status as parent company to Central Wire, Inc. makes Lincoln Electric Holdings, Inc. a current operator of the facility located at 6509 Olson Road, Union, Illinois.

143

2020.   That in 2011, Lincoln Electric Holdings, Inc., is in the business of manufacturing industrial metal and wire products.

2021.   That in 2011, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2022.   Upon information and belief, Lincoln Electric Holdings, Inc. employs several of the same high-level employees that Central Wire, Inc employed.

2023.   Lincoln Electric Holdings, Inc. is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2024.   Upon information and belief, on or after July 29, 2011 Central Wire, Inc. transferred assets related to its business to Lincoln Electric Holdings, Inc.

2025.   Upon information and belief, on or after July 29, 2011 Central Wire, Inc. transferred equipment related to its business to Lincoln Electric Holdings, Inc.

2026.   Upon information and belief, on or after July 29, 2011 Central Wire, Inc. assigned contracts related to its business to Lincoln Electric Holdings, Inc.

2027.   Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2028.   Lincoln Electric Holdings, Inc. is a successor-in-interest to Central Wire, Inc.

2029.   Lincoln Electric Holdings, Inc., a successor-in-interest to Central Wire, Inc., is liable to Dana Harper for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

2030.   WHEREFORE, Plaintiff, Dana Harper prays for a judgment against Defendant LINCOLN ELECTRIC HOLDINGS, INC. in an amount necessary to fully and fairly

144

compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT X – NEGLIGENCE
### Dana Harper v. Lincoln Electric Holdings, Inc.

2031.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2032.   At all times relevant, it was the duty of the Defendant, Lincoln Electric Holdings, Inc., owed a duty of ordinary care to Dana Harper.

2033.   The Defendant committed one or more of the following acts and/or omissions:

    a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

    b.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    c.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

    e.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2034.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

2035.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

145

2036.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2037.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2038.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XI – SUCCESSOR IN INTEREST LIABILTY
*Dana Harper v. USI Holding, Inc. As Successor-In-Interest to Central Wire, Inc.*

2148.   As of February 8, 2005, USI Holding, Inc. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2149.   Upon information and belief, on or around February 8, 2005, USI Holding, Inc., acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2150.   USI Holding, Inc.'s status as parent company to Central Wire, Inc. makes USI Holding, Inc. a current operator of the facility located at 6509 Olson Road, Union, Illinois.

146

2151.   That in 2005, USI Holding, Inc., is in the business of manufacturing industrial metal and wire products.

2152.   That in 2005, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2153.   Upon information and belief, USI Holding, Inc. employs several of the same high-level employees that Central Wire, Inc employed.

2154.   USI Holding, Inc. is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2155.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. transferred assets related to its business to USI Holding, Inc.

2156.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. transferred equipment related to its business to USI Holding, Inc.

2157.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. assigned contracts related to its business to USI Holding, Inc.

2158.   Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2159.   USI Holding, Inc. is a successor-in-interest to Central Wire, Inc.

2160.   USI Holding, Inc., a successor-in-interest to Central Wire, Inc., is liable to Dana Harper for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

WHEREFORE, Plaintiff, Dana Harper prays for a judgment against Defendant USI HOLDING, INC. in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

147

## COUNT XII – NEGLIGENCE
### *Dana Harper v. USI Holding, Inc.*

2161.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2162.   At all times relevant, it was the duty of the Defendant, CWI Holding, Inc., owed a duty of ordinary care to Dana Harper in providing a reasonably safe environment for Dana to live.

2163.   The Defendant committed one or more of the following negligent acts and/or omissions:

> a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;
>
> b.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;
>
> c.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;
>
> d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or
>
> e.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2164.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

2165.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

148

2166.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2167.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2168.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XIII – SUCCESSOR IN INTEREST LIABILITY
*Dana Harper v. Arcelormittal International America, LLC, As Successor-In-Interest to Central Wire, Inc.*

2169.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2170.   As of July of 1990, Arcelormittal International America, LLC, was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

149

2171.   Upon information and belief, on or around July of 1990, Arcelormittal International America, LLC, acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2172.   Defendant, Arcelormittal has an ownership interest in Central Wire, Inc.,

2173.   Defendant, Arcelormittal has agreed to indemnify Central Wire, Inc., and Techalloy Company, Inc., for any personal injury related to any environmental, health, and safety liabilities

2174.   Arcelormittal International America, LLC,'s status as parent company to Central Wire, Inc. makes Arcelormittal International America, LLC, a current operator of the facility located at 6509 Olson Road, Union, Illinois.

2175.   That in 1990, Arcelormittal International America, LLC,,is in the business of manufacturing industrial metal and wire products.

2176.   That in 1990, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2177.   Upon information and belief, Arcelormittal International America, LLC, employs several of the same high-level employees that Central Wire, Inc employed.

2178.   Arcelormittal International America, LLC, is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2179.   Upon information and belief, on or after 1990, Central Wire, Inc. transferred assets related to its business to Arcelormittal International America, LLC,

2180.   Upon information and belief, on or after 1990 Central Wire, Inc. transferred equipment related to its business to Arcelormittal International America, LLC,

150

2181.   Upon information and belief, on or after 1990 Central Wire, Inc. assigned contracts related to its business to Arcelormittal International America, LLC.

2182.   Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2183.   Arcelormittal International America, LLC, is a successor-in-interest to Techalloy and Central Wire, Inc.

2184.   Arcelormittal International America, LLC,, a successor-in-interest to Central Wire, Inc., is liable to Dana Harper for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

WHEREFORE, Plaintiff, Dana Harper prays for a judgment against Defendant ARCELORMITTAL INTERNATIONAL AMERICA, LLC, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XIV – NEGLIGENCE
*Dana Harper v. Arcelormittal International America, LLC,*

2148.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2149.   At all times relevant, it was the duty of the Defendant, Arcelormittal International America, LLC, owed a duty of ordinary care to Dana Harper in providing a reasonably safe environment for Dana to live.

2150.   The Defendant committed one or more of the following negligent acts and/or omissions:

   a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

151

    b.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    c.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

    e.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2151.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

2152.   As a direct and proximate cause of the Defendant's foregoing  acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

2153.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2154.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

152

2155.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XV – SUCCESSOR IN INTEREST LIABILITY
### Dana Harper v. ArcelorMittal USA Foundation, Inc. As Successor-In-Interest to Techalloy Central Wire, Inc.

2242.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2243.   As of 2006, ArcelorMittal USA Foundation, Inc. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2244.   Upon information and belief, on or around 2006, ArcelorMittal USA Foundation, Inc., acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2245.   Defendant, Arcelormittal has an ownership interest in Central Wire, Inc.

2246.   Defendant, Arcelormittal has an ownership interest in Techalloy.

2247.   Defendant, Arcelormittal has agreed to indemnify Central Wire, Inc., and Techalloy Company, Inc., for any personal injury related to any environmental, health, and safety liabilities

153

2248.   ArcelorMittal USA Foundation, Inc.'s status as parent company to Central Wire, Inc. makes ArcelorMittal USA Foundation, Inc. a current operator of the facility located at 6509 Olson Road, Union, Illinois.

2249.   That in 2006, ArcelorMittal USA Foundation, Inc., is in the business of manufacturing industrial metal and wire products.

2250.   That in 2006, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2251.   Upon information and belief, ArcelorMittal USA Foundation, Inc. employs several of the same high-level employees that Central Wire, Inc employed.

2252.   ArcelorMittal USA Foundation, Inc. is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2253.   Upon information and belief, on or after 2006, Central Wire, Inc. transferred assets related to its business to ArcelorMittal USA Foundation, Inc.

2254.   Upon information and belief, on or after 2006, Central Wire, Inc. transferred equipment related to its business to ArcelorMittal USA Foundation, Inc.

2255.   Upon information and belief, on or after 2006, Central Wire, Inc. assigned contracts related to its business to ArcelorMittal USA Foundation, Inc.

2256.   Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2257.   ArcelorMittal USA Foundation, Inc. is a successor-in-interest to Central Wire, Inc.

154

2258.   ArcelorMittal USA Foundation, Inc., a successor-in-interest to Central Wire, Inc., is liable to Dana Harper for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

2259.   WHEREFORE, Plaintiff, Dana Harper prays for a judgment against Defendant ARCELORMITTAL USA FOUNDATION, INC. in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XVI – NEGLIGENCE
### Dana Harper v. ArcelorMittal USA Foundation, Inc.

2260.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2261.   At all times relevant, it was the duty of the Defendant, ArcelorMittal USA Foundation, Inc., owed a duty of ordinary care to Dana Harper in providing a reasonably safe environment for Dana to live.

2262.   The Defendant committed one or more of the following negligent acts and/or omissions:

    a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

    b.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    c.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

    e.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

155

2263.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

2264.   As a direct and proximate cause of the Defendant's foregoing  acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

2265.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2266.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2267.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

156

## COUNT XVII – SUCCESSOR IN INTEREST LIABILITY
*Dana Harper v. Cleveland-Cliffs Steel LLC, As Successor-In-Interest to Central Wire, Inc.*

2268.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2269.   As of July 29, 2011, Cleveland-Cliffs Steel LLC, was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2270.   Upon information and belief, on or around July 29, 2011, Cleveland-Cliffs Steel LLC,, acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2271.   Cleveland-Cliffs Steel LLC,'s status as parent company to Central Wire, Inc. makes Cleveland-Cliffs Steel LLC, a current operator of the facility located at 6509 Olson Road, Union, Illinois.

2272.   That in 2011, Cleveland-Cliffs Steel LLC, is in the business of manufacturing industrial metal and wire products.

2273.   That in 2011, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2274.   Upon information and belief, Cleveland-Cliffs Steel LLC, employs several of the same high-level employees that Central Wire, Inc employed.

2275.   Cleveland-Cliffs Steel LLC, is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2276.   Upon information and belief, on or after July 29, 2011 Central Wire, Inc. transferred assets related to its business to Cleveland-Cliffs Steel LLC,

2277.   Upon information and belief, on or after July 29, 2011 Central Wire, Inc. transferred equipment related to its business to Cleveland-Cliffs Steel LLC,

157

2278. Upon information and belief, on or after July 29, 2011 Central Wire, Inc. assigned contracts related to its business to Cleveland-Cliffs Steel LLC,

2279. Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2280. Cleveland-Cliffs Steel LLC, is a successor-in-interest to Central Wire, Inc.

2281. Cleveland-Cliffs Steel LLC,, a successor-in-interest to Central Wire, Inc., is liable to Dana Harper for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

2282. WHEREFORE, Plaintiff, Dana Harper prays for a judgment against Defendant CLEVELAND-CLIFFS STEEL LLC, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XVIII – NEGLIGENCE
### *Dana Harper v. Cleveland-Cliffs Steel LLC,*

2283. Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2284. At all times relevant, it was the duty of the Defendant, Cleveland-Cliffs Steel LLC, owed a duty of ordinary care to Dana Harper in providing a reasonably safe environment for Dana to live.

2285. The Defendant committed one or more of the following negligent acts and/or omissions:

    a. Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

    b. Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    c. Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

158

     d. Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

     e. Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2286.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

2287.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

2288.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2289.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2290.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

159

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XIX – NEGLIGENCE
#### *Dana Harper v. Gerry Roup*

2039.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2040.   That between 2005 and 2020, Gerry Roup was an agent and/or employee of Techalloy and Central Wire.

2041.   That between 2005 and 2020, Defendant, Gerry Roup was the General Manager of Techlloy and/or Central Wire plant in Union, Illinois.

2042.   That Gerry Roup had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2043.   That Gerry Roup knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2044.   That Gerry Roup knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2045.   That Gerry Roup knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2046.   That Gerry Roup knew or should have known that exposing humans to TCE without proper disposal was not safe.

2047.   That Gerry Roup did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

160

2048.   The Defendant committed one or more of the following acts and/or omissions:

    a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

    b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

    e.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    f.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

    h.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2049.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2050.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2051.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2052.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal

161

obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XX – NEGLIGENCE
### *Dana Harper v. Henry Lopes*

2053.  Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2054.  That between 1985 to 2014, Henry Lopes was an agent and/or employee of Techalloy and Central Wire.

2055.  That between 1985 to 2014, Defendant, Henry Lopes was the Vice President of U.S. Operations Techalloy and/or Central Wire plant in Union, Illinois.

2056.  That Henry Lopes had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2057.  That Henry Lopes knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2058.  That Henry Lopes knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2059.  That Henry Lopes knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2060.  That Henry Lopes knew or should have known that exposing humans to TCE without proper disposal was not safe.

162

2061.   That Henry Lopes did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2062.   The Defendant committed one or more of the following acts and/or omissions:

    a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

    b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

    e.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    f.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

    h.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2063.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2064.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2065.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

163

2066.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XXI – NEGLIGENCE
### *Dana Harper v. Richard Perlick*

2067.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2068.   That between 1990 to 1997, Richard Perlick was an agent and/or employee of Techalloy and Central Wire.

2069.   That between 1990 to 1997, Defendant, Richard Perlick was the General Manager (GM) of the Techalloy and/or Central Wire plant in Union, Illinois.

2070.   That Richard Perlick had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2071.   That Richard Perlick knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2072.   That Richard Perlick knew or should have known that it was not safe to dispose TCE and other contaminants on site.

164

2073.   That Richard Perlick knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2074.   That Richard Perlick knew or should have known that exposing humans to TCE without proper disposal was not safe.

2075.   That Richard Perlick did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2076.   The Defendant committed one or more of the following acts and/or omissions:

    a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

    b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

    e.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    f.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

    h.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2077.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2078.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

165

2079.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2080.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XXII – NEGLIGENCE
### *Dana Harper v. Richard Gustafson*

2081.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2082.   That between 2000 to 2020, Richard Gustafson was an agent and/or employee of Techalloy and Central Wire.

2083.   That between 2000 to 2020, Defendant, Richard Gustafson was the production manager of Techalloy and/or Central Wire plant in Union, Illinois.

2084.   That Richard Gustafson had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2085.   That Richard Gustafson knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

166

2086.   That Richard Gustafson knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2087.   That Richard Gustafson knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2088.   That Richard Gustafson knew or should have known that exposing humans to TCE without proper disposal was not safe.

2089.   That Richard Gustafson did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2090.   The Defendant committed one or more of the following acts and/or omissions:

    a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

    b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

    e.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    f.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

    h.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2091.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

167

2092. As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2093. That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2094. That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XXIII – NEGLIGENCE
#### *Dana Harper v. Mike Grunthener*

2095. Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2096. That between 1990 through 2006, Mike Grunthener was an agent and/or employee of Techalloy and Central Wire.

2097. That between 1990 through 2006, Defendant, Mike Grunthener was the production manager of Techalloy and/or Central Wire plant in Union, Illinois.

168

2098.   That Mike Grunthener had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2099.   That Mike Grunthener knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2100.   That Mike Grunthener knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2101.   That Mike Grunthener knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2102.   That Mike Grunthener knew or should have known that exposing humans to TCE without proper disposal was not safe.

2103.   That Mike Grunthener did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2104.   The Defendant committed one or more of the following acts and/or omissions:

   a.  Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

   b.  Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   c.  Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   d.  Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

   e.  Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   f.  Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   g.  Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

169

h. Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2105. As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2106. As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2107. That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2108. That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXIV – NEGLIGENCE
### *Dana Harper v. David Plecner*

2109. Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

170

2110. That between 1986 and 2009, David Plecner was an agent and/or employee of Techalloy and Central Wire.

2111. That between 1986 and 2009, Defendant, David Plecner was the environmental supervisor of Techllaoy and/or Central Wire plant in Union, Illinois.

2112. That David Plecner had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2113. That David Plecner knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2114. That David Plecner knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2115. That David Plecner knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2116. That David Plecner knew or should have known that exposing humans to TCE without proper disposal was not safe.

2117. That David Plecner did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2118. The Defendant committed one or more of the following acts and/or omissions:

    a. Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

    b. Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    c. Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    d. Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

171

e. Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

f. Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

g. Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

h. Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2119. As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2120. As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2121. That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2122. That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## <u>COUNT XXV – NEGLIGENCE</u>

172

### *Dana Harper v. Victor Polard*

2123.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2124.   That between 2002 and 2006, Victor Polard was the Vice President of Arcelormittal International America, LLC.

2125.   That between 2002 and 2006, Victor Polard was Vice President of Arcelormittal USA Foundation, Inc.

2126.   That between 2002 and 2006, Defendant, Victor Polard an agent and/or employee Techalloy and/or Central Wire plant in Union, Illinois.

2127.   That Victor Polard had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2128.   That Victor Polard knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2129.   That Victor Polard knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2130.   That Victor Polard knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2131.   That Victor Polard knew or should have known that exposing humans to TCE without proper disposal was not safe.

2132.   That Victor Polard did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2133.   The Defendant committed one or more of the following acts and/or omissions:

173

a. Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

b. Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

c. Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

d. Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

e. Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

f. Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

g. Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

h. Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2134. As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2135. As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2136. That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2137. That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal

174

obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XXVI – NEGLIGENCE
***Dana Harper v. Carl Reed***

2138. Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2139. That between 1986 and 2003, Carl Reed was an agent and/or employee of Techalloy and/or Central Wire plant in Union, Illinois.

2140. That between 1986 and 2003, Defendant, Carl Reed a Corporate Safety Officer at Techalloy and/or Central Wire plant in Union, Illinois.

2141. That Carl Reed had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2142. That Carl Reed knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2143. That Carl Reed knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2144. That Carl Reed knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2145. That Carl Reed knew or should have known that exposing humans to TCE without proper disposal was not safe.

175

2146.   That Carl Reed did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2147.   The Defendant committed one or more of the following acts and/or omissions:

    a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

    b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

    e.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    f.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

    h.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2148.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2149.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2150.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

176

2151.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XXVII – NEGLIGENCE
### *Dana Harper v. Terry Tamanauskas*

2152.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2153.   That between 2000 to present, Terry Tamanauskas was an agent and/or employee of Techalloy and/or Central Wire plant in Union, Illinois.

2154.   That between 2020 to present, Defendant, Terry Tamanauskas was a General Manager at Techalloy and/or Central Wire plant in Union, Illinois.

2155.   That Terry Tamanauskas had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2156.   That Terry Tamanauskas knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2157.   That Terry Tamanauskas knew or should have known that it was not safe to dispose TCE and other contaminants on site.

177

2158.   That Terry Tamanauskas knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2159.   That Terry Tamanauskas knew or should have known that exposing humans to TCE without proper disposal was not safe.

2160.   That Terry Tamanauskas did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2161.   The Defendant committed one or more of the following acts and/or omissions:

a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

e.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

f.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

h.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2162.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2163.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

178

2164.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2165.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXVIII – NEGLIGENCE
### *Dana Harper v. Tom Hanewald*

2166.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2167.   That between 2015 and 2018, Tom Hanewald was an agent and/or employee of Techalloy and/or Central Wire plant in Union, Illinois.

2168.   That between 2015 and 2018, Defendant, Tom Hanewald was a Vice President/Chief Administrative Officer at Techalloy and/or Central Wire plant in Union, Illinois.

2169.   That Tom Hanewald had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2170.   That Tom Hanewald knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

179

2171.   That Tom Hanewald knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2172.   That Tom Hanewald knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2173.   That Tom Hanewald knew or should have known that exposing humans to TCE without proper disposal was not safe.

2174.   That Tom Hanewald did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2175.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

   b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

   e.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   f.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

   h.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2176.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

180

2177.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2178.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2179.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XXIX– NEGLIGENCE
### *Dana Harper v. Thiery Cremailh*

2180.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2181.   That between 1990 and 2007, Thiery Cremailh was an agent and/or employee of Techalloy and/or Central Wire.

2182.   That between 1990 and 2007, Defendant, Thiery Cremailh was an Executive at Techalloy and/or Central Wire.

2183.   That between 1990 and 2007, Defendant, Thiery Cremailh was an Executive at Arcelormittal International America, LLC.

181

2184.   That Thiery Cremailh had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2185.   That Thiery Cremailh knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2186.   That Thiery Cremailh knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2187.   That Thiery Cremailh knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2188.   That Thiery Cremailh knew or should have known that exposing humans to TCE without proper disposal was not safe.

2189.   That Thiery Cremailh did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2190.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

   b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

   e.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   f.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

182

     h.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2191.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2192.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2193.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2194.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXX – NEGLIGENCE
### *Dana Harper v. Gunnar K. Gilberg*

2195.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

183

2196.   That between 1990 and 1998, Gunnar Gilberg was an agent and/or employee of the Techalloy and/or Central Wire plant in Union, Illinois.

2197.   That between 2015 and 2018, Defendant, Gunnar K. Gilberg was an Executive at the Techalloy and/or Central Wire plant in Union, Illinois.

2198.   That Gunnar K. Gilberg had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2199.   That Gunnar K. Gilberg knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2200.   That Gunnar K. Gilberg knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2201.   That Gunnar K. Gilberg knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2202.   That Gunnar K. Gilberg knew or should have known that exposing humans to TCE without proper disposal was not safe.

2203.   That Gunnar K. Gilberg did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2204.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

   b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

184

e. Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

f. Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

g. Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

h. Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2205. As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2206. As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2207. That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2208. That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXI – NEGLIGENCE

*Dana Harper v. Jean-Claude Couasnon*

2209. Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2210. That between 2004 and 2006, Jean Claude Couasnon was an agent and/or employee of the Techalloy and/or Central Wire plant in Union, Illinois.

2211. That between 2004 and 2006, Defendant, Jean Claude Couasnon was an Executive at the Techalloy and/or Central Wire plant in Union, Illinois.

2212. That Jean-Claude Couasnon had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2213. That Jean-Claude Couasnon knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2214. That Jean-Claude Couasnon knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2215. That Jean-Claude Couasnon knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2216. That Jean-Claude Couasnon knew or should have known that exposing humans to TCE without proper disposal was not safe.

2217. That Jean-Claude Couasnon did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2218. The Defendant committed one or more of the following acts and/or omissions:

    a. Failed to have the Harper home tested for TCE, TCA, PCE, DCE, and DCA;

    b. Permitted unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

186

    c.   Failed to require safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    d.   Permitted TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

    e.   Failed to timely and properly alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    f.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

    h.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2219.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, chemicals, including TCE, were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2220.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2221.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2222.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

187

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XXXII – NEGLIGENCE
### *Dana Harper v. Jack Zuharich*

2223.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

2224.   That between 1980 and 1990, Jack Zuharich was an agent and/or employee of the Techalloy and/or Central Wire plant in Union, Illinois.

2225.   That between 1980 and 1990, Defendant, Jack Zuharich was an Executive / Chief Executive Officer at the Techalloy and/or Central Wire plant in Union, Illinois.

2226.   That Jack Zuharich had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2227.   That Jack Zuharich knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2228.   That Jack Zuharich knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2229.   That Jack Zuharich knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2230.   That Jack Zuharich knew or should have known that exposing humans to TCE without proper disposal was not safe.

2231.   That Jack Zuharich did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

188

2232.   The Defendant committed one or more of the following acts and/or omissions:

a.   Failed to have the Harper home tested for TCE, TCA, PCE, DCE, and DCA;

b.   Permitted unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

c.   Failed to require safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

d.   Permitted TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

e.   Failed to timely and properly alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

f.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

h.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2233.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Dana Harper was exposed to while living in Union.

2234.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Dana Harper was caused to develop Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

2235.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Dana Harper was caused to incur an increased chance in developing Non-Hodgkin Lymphoma.

2236.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal

189

obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

**COUNT XXXIII – NEGLIGENCE**
*Dana Harper v. Viking Chemical Company*

2237.   Plaintiff Dana Harper repeats, realleges, and incorporates all preceding paragraphs herein.

2238.   In 1968, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2239.   In 1968, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2240.   In 1968, Defendant, Viking Chemical Company created TCE for Techalloy.

2241.   In 1968, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2242.   In 1968, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2243.   In 1968, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2244.   In 1968, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2245.   In 1968, Defendant, Viking Chemical Company created PCE for Techalloy.

2246.   In 1968, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2247.   In 1968, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2248.   In 1968, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2249.   In 1968, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2250.   In 1968, Defendant, Viking Chemical Company created TCA for Techalloy.

190

2251.   In 1968, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2252.   In 1968, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2253.   In 1968, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2254.   In 1968, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2255.   In 1968, Defendant, Viking Chemical Company created DCA for Techalloy.

2256.   In 1968, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2257.   In 1968, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2258.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2259.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2260.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2261.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2262.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2263.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2264.   In 1968, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

191

2265. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2266. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2267. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2268. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2269. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2270. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2271. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2272. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2273. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2274. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

192

2275.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2276.    In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2277.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2278.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2279.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2280.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2281.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2282.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2283.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2284.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

193

2285.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2286.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2287.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2288.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2289.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2290.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2291.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2292.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2293.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2294.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2295.   In 1969, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2296.   In 1969, Defendant, Viking Chemical Company distributed TCE to Techalloy.

194

2297. In 1969, Defendant, Viking Chemical Company created TCE for Techalloy.

2298. In 1969, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2299. In 1969, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2300. In 1969, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2301. In 1969, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2302. In 1969, Defendant, Viking Chemical Company created PCE for Techalloy.

2303. In 1969, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2304. In 1969, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2305. In 1969, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2306. In 1969, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2307. In 1969, Defendant, Viking Chemical Company created TCA for Techalloy.

2308. In 1969, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2309. In 1969, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2310. In 1969, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2311. In 1969, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2312. In 1969, Defendant, Viking Chemical Company created DCA for Techalloy.

2313. In 1969, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2314. In 1969, Defendant, Viking Chemical Company distributed DCA to Techalloy.

195

2315. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2316. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2317. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2318. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2319. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2320. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2321. In 1969, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2322. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2323. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2324. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

196

2325.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2326.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2327.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2328.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2329.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2330.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2331.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2332.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2333.   In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2334.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2335.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

197

2336.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2337.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2338.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2339.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2340.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2341.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2342.   In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2343.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2344.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2345.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2346.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

198

2347.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2348.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2349.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2350.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2351.   In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2352.  In 1970, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2353.  In 1970, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2354.  In 1970, Defendant, Viking Chemical Company created TCE for Techalloy.

2355.  In 1970, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2356.  In 1970, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2357.  In 1970, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2358.  In 1970, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2359.  In 1970, Defendant, Viking Chemical Company created PCE for Techalloy.

2360.  In 1970, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2361.  In 1970, Defendant, Viking Chemical Company distributed PCE to Techalloy.

199

2362.   In 1970, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2363.   In 1970, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2364.   In 1970, Defendant, Viking Chemical Company created TCA for Techalloy.

2365.   In 1970, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2366.   In 1970, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2367.   In 1970, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2368.   In 1970, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2369.   In 1970, Defendant, Viking Chemical Company created DCA for Techalloy.

2370.   In 1970, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2371.   In 1970, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2372.   In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2373.   In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2374.   In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2375.   In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2376.   In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

200

2377. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2378. In 1970, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2379. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2380. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2381. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2382. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2383. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2384. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2385. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2386. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

201

2387.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2388.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2389.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2390.   In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2391.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2392.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2393.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2394.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2395.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2396.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2397.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

202

2398.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2399.   In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2400.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2401.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2402.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2403.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2404.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2405.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2406.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2407.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

203

2408.    In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2409.    In 1971, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2410.    In 1971, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2411.    In 1971, Defendant, Viking Chemical Company created TCE for Techalloy.

2412.    In 1971, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2413.    In 1971, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2414.    In 1971, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2415.    In 1971, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2416.    In 1971, Defendant, Viking Chemical Company created PCE for Techalloy.

2417.    In 1971, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2418.    In 1971, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2419.    In 1971, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2420.    In 1971, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2421.    In 1971, Defendant, Viking Chemical Company created TCA for Techalloy.

2422.    In 1971, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2423.    In 1971, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2424.    In 1971, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2425.    In 1971, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2426.    In 1971, Defendant, Viking Chemical Company created DCA for Techalloy.

204

2427. In 1971, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2428. In 1971, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2429. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2430. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2431. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2432. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2433. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2434. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2435. In 1971, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2436. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2437. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

205

2438. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2439. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2440. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2441. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2442. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2443. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2444. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2445. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2446. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2447. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

206

2448.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2449.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2450.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2451.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2452.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2453.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2454.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2455.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2456.    In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2457.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2458.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

207

2459.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2460.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2461.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2462.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2463.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2464.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2465.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2466.  In 1972, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2467.  In 1972, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2468.  In 1972, Defendant, Viking Chemical Company created TCE for Techalloy.

2469.  In 1972, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2470.  In 1972, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2471.  In 1972, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2472.  In 1972, Defendant, Viking Chemical Company distributed PCE to Techalloy.

208

2473.   In 1972, Defendant, Viking Chemical Company created PCE for Techalloy.

2474.   In 1972, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2475.   In 1972, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2476.   In 1972, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2477.   In 1972, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2478.   In 1972, Defendant, Viking Chemical Company created TCA for Techalloy.

2479.   In 1972, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2480.   In 1972, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2481.   In 1972, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2482.   In 1972, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2483.   In 1972, Defendant, Viking Chemical Company created DCA for Techalloy.

2484.   In 1972, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2485.   In 1972, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2486.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2487.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2488.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

209

2489. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2490. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2491. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2492. In 1972, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2493. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2494. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2495. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2496. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2497. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2498. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

210

2499.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2500.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2501.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2502.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2503.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2504.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2505.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2506.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2507.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2508.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2509.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

211

2510.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2511.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2512.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2513.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2514.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2515.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2516.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2517.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2518.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2519.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2520.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

212

2521. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2522. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2523. In 1973, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2524. In 1973, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2525. In 1973, Defendant, Viking Chemical Company created TCE for Techalloy.

2526. In 1973, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2527. In 1973, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2528. In 1973, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2529. In 1973, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2530. In 1973, Defendant, Viking Chemical Company created PCE for Techalloy.

2531. In 1973, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2532. In 1973, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2533. In 1973, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2534. In 1973, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2535. In 1973, Defendant, Viking Chemical Company created TCA for Techalloy.

2536. In 1973, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2537. In 1973, Defendant, Viking Chemical Company distributed TCA to Techalloy.

213

2538. In 1973, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2539. In 1973, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2540. In 1973, Defendant, Viking Chemical Company created DCA for Techalloy.

2541. In 1973, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2542. In 1973, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2543. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2544. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2545. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2546. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2547. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2548. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2549. In 1973, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2550. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

214

2551.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2552.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2553.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2554.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2555.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2556.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2557.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2558.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2559.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2560.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

215

2561.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2562.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2563.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2564.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2565.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2566.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2567.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2568.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2569.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2570.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2571.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

216

2572. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2573. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2574. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2575. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2576. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2577. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2578. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2579. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2580. In 1974, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2581. In 1974, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2582. In 1974, Defendant, Viking Chemical Company created TCE for Techalloy.

2583. In 1974, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2584. In 1974, Defendant, Viking Chemical Company distributed TCE to Techalloy.

217

2585.   In 1974, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2586.   In 1974, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2587.   In 1974, Defendant, Viking Chemical Company created PCE for Techalloy.

2588.   In 1974, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2589.   In 1974, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2590.   In 1974, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2591.   In 1974, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2592.   In 1974, Defendant, Viking Chemical Company created TCA for Techalloy.

2593.   In 1974, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2594.   In 1974, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2595.   In 1974, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2596.   In 1974, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2597.   In 1974, Defendant, Viking Chemical Company created DCA for Techalloy.

2598.   In 1974, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2599.   In 1974, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2600.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2601.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

218

2602.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2603.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2604.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2605.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2606.   In 1974, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2607.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2608.    In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2609.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2610.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2611.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

219

2612.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2613.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2614.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2615.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2616.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2617.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2618.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2619.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2620.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2621.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2622.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

220

2623.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2624.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2625.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2626.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2627.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2628.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2629.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2630.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2631.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2632.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2633.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

221

2634. In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2635. In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2636. In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2637. In 1975, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2638. In 1975, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2639. In 1975, Defendant, Viking Chemical Company created TCE for Techalloy.

2640. In 1975, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2641. In 1975, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2642. In 1975, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2643. In 1975, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2644. In 1975, Defendant, Viking Chemical Company created PCE for Techalloy.

2645. In 1975, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2646. In 1975, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2647. In 1975, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2648. In 1975, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2649. In 1975, Defendant, Viking Chemical Company created TCA for Techalloy.

222

2650. In 1975, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2651. In 1975, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2652. In 1975, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2653. In 1975, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2654. In 1975, Defendant, Viking Chemical Company created DCA for Techalloy.

2655. In 1975, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2656. In 1975, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2657. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2658. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2659. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2660. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2661. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2662. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2663. In 1975, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

223

2664. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2665. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2666. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2667. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2668. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2669. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2670. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2671. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2672. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2673. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

224

2674.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2675.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2676.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2677.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2678.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2679.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2680.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2681.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2682.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2683.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

225

2684.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2685.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2686.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2687.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2688.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2689.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2690.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2691.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2692.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2693.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2694.   In 1976, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2695.   In 1976, Defendant, Viking Chemical Company distributed TCE to Techalloy.

226

2696. In 1976, Defendant, Viking Chemical Company created TCE for Techalloy.

2697. In 1976, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2698. In 1976, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2699. In 1976, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2700. In 1976, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2701. In 1976, Defendant, Viking Chemical Company created PCE for Techalloy.

2702. In 1976, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2703. In 1976, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2704. In 1976, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2705. In 1976, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2706. In 1976, Defendant, Viking Chemical Company created TCA for Techalloy.

2707. In 1976, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2708. In 1976, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2709. In 1976, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2710. In 1976, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2711. In 1976, Defendant, Viking Chemical Company created DCA for Techalloy.

2712. In 1976, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2713. In 1976, Defendant, Viking Chemical Company distributed DCA to Techalloy.

227

2714. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2715. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2716. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2717. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2718. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2719. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2720. In 1976, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2721. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2722. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2723. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

228

2724. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2725. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2726. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2727. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2728. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2729. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2730. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2731. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2732. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2733. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2734. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

229

2735. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2736. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2737. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2738. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2739. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2740. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2741. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2742. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2743. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2744. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2745. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

230

2746.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2747.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2748.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2749.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2750.   In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2751.  In 1977, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2752.  In 1977, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2753.  In 1977, Defendant, Viking Chemical Company created TCE for Techalloy.

2754.  In 1977, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2755.  In 1977, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2756.  In 1977, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2757.  In 1977, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2758.  In 1977, Defendant, Viking Chemical Company created PCE for Techalloy.

2759.  In 1977, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2760.  In 1977, Defendant, Viking Chemical Company distributed PCE to Techalloy.

231

2761. In 1977, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2762. In 1977, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2763. In 1977, Defendant, Viking Chemical Company created TCA for Techalloy.

2764. In 1977, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2765. In 1977, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2766. In 1977, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2767. In 1977, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2768. In 1977, Defendant, Viking Chemical Company created DCA for Techalloy.

2769. In 1977, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2770. In 1977, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2771. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2772. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2773. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2774. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2775. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

Received 06-24-2021 08:45 AM / Circuit Clerk Accepted on 06-24-2021 08:54 AM / Transaction #13796676 / Case #21LA000162
Page 232 of 289

2776.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2777.  In 1977, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2778.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2779.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2780.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2781.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2782.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2783.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2784.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2785.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

233

2786. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2787. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2788. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2789. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2790. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2791. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2792. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2793. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2794. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2795. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2796. In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

234

2797.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2798.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2799.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2800.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2801.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2802.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2803.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2804.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2805.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2806.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

235

2807.    In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2808.    In 1978, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2809.    In 1978, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2810.    In 1978, Defendant, Viking Chemical Company created TCE for Techalloy.

2811.    In 1978, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2812.    In 1978, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2813.    In 1978, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2814.    In 1978, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2815.    In 1978, Defendant, Viking Chemical Company created PCE for Techalloy.

2816.    In 1978, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2817.    In 1978, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2818.    In 1978, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2819.    In 1978, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2820.    In 1978, Defendant, Viking Chemical Company created TCA for Techalloy.

2821.    In 1978, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2822.    In 1978, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2823.    In 1978, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2824.    In 1978, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2825.    In 1978, Defendant, Viking Chemical Company created DCA for Techalloy.

236

2826. In 1978, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2827. In 1978, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2828. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2829. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2830. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2831. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2832. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2833. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2834. In 1978, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2835. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2836. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

237

2837. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2838. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2839. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2840. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2841. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2842. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2843. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2844. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2845. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2846. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

238

2847. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2848. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2849. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2850. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2851. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2852. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2853. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2854. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2855. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2856. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2857. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

239

2858.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2859.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2860.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2861.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2862.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2863.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2864.   In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2865.  In 1979, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2866.  In 1979, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2867.  In 1979, Defendant, Viking Chemical Company created TCE for Techalloy.

2868.  In 1979, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2869.  In 1979, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2870.  In 1979, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2871.  In 1979, Defendant, Viking Chemical Company distributed PCE to Techalloy.

240

2872.  In 1979, Defendant, Viking Chemical Company created PCE for Techalloy.

2873.  In 1979, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2874.  In 1979, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2875.  In 1979, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2876.  In 1979, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2877.  In 1979, Defendant, Viking Chemical Company created TCA for Techalloy.

2878.  In 1979, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2879.  In 1979, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2880.  In 1979, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2881.  In 1979, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2882.  In 1979, Defendant, Viking Chemical Company created DCA for Techalloy.

2883.  In 1979, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2884.  In 1979, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2885.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2886.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2887.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

241

2888.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2889.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2890.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2891.  In 1979, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2892.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2893.   In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2894.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2895.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2896.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2897.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

242

2898.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2899.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2900.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2901.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2902.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2903.   In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2904.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2905.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2906.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2907.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2908.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

243

2909. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2910. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2911. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2912. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2913. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2914. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2915. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2916. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2917. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2918. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2919. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

244

2920.  In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2921.   In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2922.  In 1980, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2923.  In 1980, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2924.  In 1980, Defendant, Viking Chemical Company created TCE for Techalloy.

2925.  In 1980, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2926.  In 1980, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2927.  In 1980, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2928.  In 1980, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2929.  In 1980, Defendant, Viking Chemical Company created PCE for Techalloy.

2930.  In 1980, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2931.  In 1980, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2932.  In 1980, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2933.  In 1980, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2934.  In 1980, Defendant, Viking Chemical Company created TCA for Techalloy.

2935.  In 1980, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2936.  In 1980, Defendant, Viking Chemical Company distributed TCA to Techalloy.

245

2937. In 1980, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2938. In 1980, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2939. In 1980, Defendant, Viking Chemical Company created DCA for Techalloy.

2940. In 1980, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2941. In 1980, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2942. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2943. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2944. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2945. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2946. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2947. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2948. In 1980, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2949. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

246

2950.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2951.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2952.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2953.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2954.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2955.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2956.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2957.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2958.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2959.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

247

2960. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2961. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2962. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2963. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2964. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2965. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2966. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2967. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2968. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2969. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2970. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

248

2971. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2972. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2973. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2974. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2975. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2976. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2977. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2978. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2979. In 1981, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2980. In 1981, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2981. In 1981, Defendant, Viking Chemical Company created TCE for Techalloy.

2982. In 1981, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2983. In 1981, Defendant, Viking Chemical Company distributed TCE to Techalloy.

249

2984. In 1981, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2985. In 1981, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2986. In 1981, Defendant, Viking Chemical Company created PCE for Techalloy.

2987. In 1981, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2988. In 1981, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2989. In 1981, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2990. In 1981, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2991. In 1981, Defendant, Viking Chemical Company created TCA for Techalloy.

2992. In 1981, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2993. In 1981, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2994. In 1981, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2995. In 1981, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2996. In 1981, Defendant, Viking Chemical Company created DCA for Techalloy.

2997. In 1981, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2998. In 1981, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2999. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3000. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

250

3001.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3002.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3003.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3004.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3005.  In 1981, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3006.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3007.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3008.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3009.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3010.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

251

3011. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3012. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3013. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3014. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3015. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3016. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3017. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3018. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3019. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3020. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3021. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

252

3022.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3023.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3024.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3025.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3026.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3027.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3028.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3029.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3030.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3031.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3032.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

253

3033.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3034.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3035.  In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3036.  In 1982, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3037.  In 1982, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3038.  In 1982, Defendant, Viking Chemical Company created TCE for Techalloy.

3039.  In 1982, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3040.  In 1982, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3041.  In 1982, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3042.  In 1982, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3043.  In 1982, Defendant, Viking Chemical Company created PCE for Techalloy.

3044.  In 1982, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3045.  In 1982, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3046.  In 1982, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3047.  In 1982, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3048.  In 1982, Defendant, Viking Chemical Company created TCA for Techalloy.

254

3049. In 1982, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3050. In 1982, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3051. In 1982, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3052. In 1982, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3053. In 1982, Defendant, Viking Chemical Company created DCA for Techalloy.

3054. In 1982, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3055. In 1982, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3056. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3057. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3058. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3059. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3060. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3061. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3062. In 1982, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

255

3063.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3064.    In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3065.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3066.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3067.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3068.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3069.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3070.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3071.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3072.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

256

3073. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3074. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3075. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3076. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3077. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3078. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3079. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3080. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3081. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3082. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

257

3083.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3084.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3085.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3086.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3087.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3088.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3089.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3090.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3091.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3092.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3093.   In 1983, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3094.   In 1983, Defendant, Viking Chemical Company distributed TCE to Techalloy.

258

3095.   In 1983, Defendant, Viking Chemical Company created TCE for Techalloy.

3096.   In 1983, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3097.   In 1983, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3098.   In 1983, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3099.   In 1983, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3100.   In 1983, Defendant, Viking Chemical Company created PCE for Techalloy.

3101.   In 1983, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3102.   In 1983, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3103.   In 1983, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3104.   In 1983, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3105.   In 1983, Defendant, Viking Chemical Company created TCA for Techalloy.

3106.   In 1983, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3107.   In 1983, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3108.   In 1983, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3109.   In 1983, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3110.   In 1983, Defendant, Viking Chemical Company created DCA for Techalloy.

3111.   In 1983, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3112.   In 1983, Defendant, Viking Chemical Company distributed DCA to Techalloy.

259

3113.   In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3114.   In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3115.   In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3116.   In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3117.   In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3118.   In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3119.   In 1983, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3120.   In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3121.    In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3122.   In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

260

3123.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3124.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3125.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3126.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3127.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3128.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3129.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3130.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3131.   In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3132.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3133.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

261

3134. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3135. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3136. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3137. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3138. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3139. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3140. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3141. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3142. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3143. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3144. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

262

3145. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3146. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3147. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3148. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3149. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3150. In 1984, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3151. In 1984, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3152. In 1984, Defendant, Viking Chemical Company created TCE for Techalloy.

3153. In 1984, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3154. In 1984, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3155. In 1984, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3156. In 1984, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3157. In 1984, Defendant, Viking Chemical Company created PCE for Techalloy.

3158. In 1984, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3159. In 1984, Defendant, Viking Chemical Company distributed PCE to Techalloy.

263

3160. In 1984, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3161. In 1984, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3162. In 1984, Defendant, Viking Chemical Company created TCA for Techalloy.

3163. In 1984, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3164. In 1984, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3165. In 1984, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3166. In 1984, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3167. In 1984, Defendant, Viking Chemical Company created DCA for Techalloy.

3168. In 1984, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3169. In 1984, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3170. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3171. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3172. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3173. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3174. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

264

3175. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3176. In 1984, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3177. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3178. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3179. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3180. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3181. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3182. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3183. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3184. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

265

3185.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3186.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3187.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3188.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3189.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3190.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3191.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3192.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3193.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3194.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3195.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

266

3196. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3197. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3198. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3199. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3200. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3201. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3202. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3203. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3204. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3205. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

267

3206.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3207.   At all relevant times, it was the duty of the Defendant to exercise a reasonable standard of care for Dana Harper, including, but not limited to, the following circumstances:

a.   To warn the consumers of TCE, including Techalloy, of the health hazards of TCE;

b.   To warn the consumers of TCE, including Techalloy, of the proper disposal practices of TCE;

c.   To warn the consumers of TCE, including Techalloy, of the cancers TCE is linked to;

d.   To warn the consumers of TCE, including Techalloy, that TCE is a carcinogen while transmitted in the air, soil, and water;

e.   To warn the consumers of TCE, including Techalloy, that they needed to warn the Village of Union of their use of TCE before starting to use the carcinogen;

f.   To warn the consumers of TCE, including Techalloy, that they needed to warn the neighboring residents, schools, operators of the public well water in the Village of Union, and other government entities that Techalloy would be using TCE;

g.   To ensure that the consumers of TCE, including Techalloy, had a proper, safe and appropriate practice in place to dispose of TCE;

h.   To ensure that the consumers of TCE, including Techalloy, were offered services to properly and safely dispose of TCE if they were unaware how to do so;

3208.   The Defendant committed one or more of the following acts and/or omissions:

a.   Failed to warn Techalloy that TCE was a carcinogen;

b.   Failed to warn Techalloy that TCE exposure posed health hazards;

c.   Failed to warn Techalloy that TCE exposure is linked to cancer, including non-hodgkins lymphoma;

d.   Failed to warn Techalloy to give notice to the Village of Union, Evergreen Elementary, and the Harper residence they would be using TCE;

e.   Failed to warn Techalloy that TCE has cancer causing effects that are admitted through the soil;

268

f. Failed to warn Techalloy that TCE has cancer causing effects that are admitted through the air;

g. Failed to warn Techalloy that TCE has cancer causing effects that are admitted through groundwater;

h. Failed to ensure that Techalloy was properly disposing of TCE;

i. Failed to implement a system with its consumer, Techalloy, that it was properly disposing of TCE;

j. Failed to offer a proper and safe disposal practice of TCE;

k. Failed to advise Techalloy of the proper and safe disposal practice of TCE;

l. Failed to advise Techalloy of the risks of improper disposal of TCE;

m. Failed to advise Techalloy of the risks of TCE emission;

n. Failed to provide Techalloy with the means and methods to properly dispose of TCE;

o. Prioritized profits or safety by selling Techalloy TCE for a decade without ensuring Techalloy had a safe disposal practice;

p. Failed to warn the Village of Union that a consumer purchased TCE in their town; and/or

q. Failed to warn the Harper residence that a neighboring manufacturing plant purchased their TCE;

r. Continued to sell TCE and other VOCs to Techalloy when they knew or should have known that Techalloy did not have safe and effective disposal systems.

3209. As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, carcinogens were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

269

3210.    As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to VOCs, including TCE, which were a proximate cause of her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

3211.    That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXIV – NEGLIGENCE
### Dana Harper v. Weston Solutions, Inc.

3212.    Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

3213.    That from 1986 to 1996, Techalloy retained Defendant, Weston Solutions, Inc., to remediate the air, water and soil of TCE, TCA, PCE, DCE, and DCA in the town of Union, Illinois.

3214.    Weston Solutions, Inc., had a duty to exercise ordinary care for the health, safety, and well-being of Dana Harper and all those living and working in Union, Illinois.

3215.    At all times relevant, Defendant knew or should have known that TCE, TCA, PCE, DCE, and DCA emissions from Techalloy would have a toxic, poisonous and highly deleterious defect upon the health, safety, and well-being of Dana and persons exposed to it.

3216.    The Defendant committed one or more of the following acts and/or omissions:

   a.    Failed to timely test the Harper home for TCE, TCA, PCE, DCE, and DCA;

270

    b.   Failed to alert and advise residents, including the Harpers, that VOCs, including TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    c.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    d.   Failed to timely and properly implement an effective remediation plan for the soil, ground water and vapors associated with TCE, TCA, PCE, DCE, and DCA;

    e.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

    f.   Failed to timely and properly protect residents, including the Harpers, from the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3217.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

3218.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

3219.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

3220.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and

271

residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3221.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXV – NEGLIGENCE
### Dana Harper v. Matrix Environmental

3222.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

3223.   That from 2000 through 2008, Techalloy retained Defendant, Matrix Environmental, Inc., to remediate the air, water and soil of TCE, TCA, PCE, DCE, and DCA in the town of Union, Illinois.

3224.   Matrix Environmental, Inc., had a duty to exercise ordinary care for the health, safety, and well-being of Dana Harper and all those living and working in Union, Illinois.

3225.   At all times relevant, Defendant knew or should have known that TCE, TCA, PCE, DCE, and DCA emissions from Techalloy would have a toxic, poisonous and highly deleterious defect upon the health, safety, and well-being of Dana and persons exposed to it.

3226.   The Defendant committed one or more of the following acts and/or omissions:

a.   Failed to timely test the Harper home for TCE, TCA, PCE, DCE, and DCA;

272

    b.   Failed to alert and advise residents, including the Harpers, that VOCs, including TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    c.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    d.   Failed to timely and properly implement an effective remediation plan for the soil, ground water and vapors associated with TCE, TCA, PCE, DCE, and DCA;

    e.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

    f.   Failed to timely and properly protect residents, including the Harpers, from the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3227.  As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

3228.  As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

3229.  As a direct and proximate cause of the Defendants' acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

3230.  As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

273

3231. That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXVI – NEGLIGENCE
### *Dana Harper v. Autmnwood ESH Consultants, Inc.*

3232. Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

3233. That from 2008 through present, Central Wire and Techalloy retained Defendant, Autmnwood ESH Consultants, Inc., to remediate the air, water and soil of TCE, TCA, PCE, DCE, and DCA in the town of Union, Illinois.

3234. Autmnwood ESH Consultants, Inc., had a duty to exercise ordinary care for the health, safety, and well-being of Dana Harper and all those living and working in Union, Illinois.

3235. At all times relevant, Defendant knew or should have known that TCE, TCA, PCE, DCE, and DCA emissions from Techalloy would have a toxic, poisonous and highly deleterious defect upon the health, safety, and well-being of Dana and persons exposed to it.

3236. The Defendant committed one or more of the following acts and/or omissions:

    a. Failed to timely test the Harper home for TCE, TCA, PCE, DCE, and DCA;

    b. Failed to alert and advise residents, including the Harpers, that VOCs, including TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    c. Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

274

     d.   Failed to timely and properly implement an effective remediation plan for the soil, ground water and vapors associated with TCE, TCA, PCE, DCE, and DCA;

     e.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

     f.   Failed to timely and properly protect residents, including the Harpers, from the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3237.  As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

3238.  As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

3239.  As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

3240.  As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3241.  That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability,

275

disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXVII – NEGLIGENCE
### *Dana Harper v. Antea USA, Inc.*

3242.    Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

3243.    That from 1990 through 2000, Techalloy retained Defendant, InteGREYted, Inc., doing business as Antea USA, Inc., to remediate the air, water and soil of TCE, TCA, PCE, DCE, and DCA in the town of Union, Illinois.

3244.    Antea USA, Inc., had a duty to exercise ordinary care for the health, safety, and well-being of Dana Harper and all those living and working in Union, Illinois.

3245.    At all times relevant, Defendant knew or should have known that TCE, TCA, PCE, DCE, and DCA emissions from Techalloy would have a toxic, poisonous and highly deleterious defect upon the health, safety, and well-being of Dana and persons exposed to it.

3246.    The Defendant committed one or more of the following acts and/or omissions:

a.    Failed to timely test the Harper home for TCE, TCA, PCE, DCE, and DCA;

b.    Failed to alert and advise residents, including the Harpers, that VOCs, including TCE, TCA, PCA, DCE, and DCA had entered the ground water;

c.    Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

d.    Failed to timely and properly implement an effective remediation plan for the soil, ground water and vapors associated with TCE, TCA, PCE, DCE, and DCA;

276

e. Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

f. Failed to timely and properly protect residents, including the Harpers, from the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3247. As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

3248. As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

3249. As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

3250. As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3251. That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

Received 06-24-2021 08:45 AM / Circuit Clerk Accepted on 06-24-2021 08:54 AM / Transaction #13796676 / Case #21LA000162
Page 277 of 289

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XXXVIII – NEGLIGENCE
#### *Dana Harper v. John W. Thorsen*

3252.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 1 through 1879, above as fully stated herein.

3253.   That from 1981 through the present, Techalloy retained Defendant, John W. Thorsen, P.E., to remediate the air, water and soil of TCE, TCA, PCE, DCE, and DCA in the town of Union, Illinois.

3254.   At all times relevant John W. Thorsen had control of remediation efforts.

3255.   John W. Thorsen is a current principal of owner of Autmndwood ESH Consultants, Inc.

3256.   John W. Thorsen was the former Vice President of Weston Solutions, Inc.

3257.   John W. Thorsen was the former manager of Matrix Environmental, Inc.

3258.   John W. Thorsen had a duty to exercise ordinary care for the health, safety, and well-being of Dana Harper and all those living and working in Union, Illinois.

3259.   At all times relevant, Defendant knew or should have known that TCE, TCA, PCE, DCE, and DCA emissions from Techalloy would have a toxic, poisonous and highly deleterious defect upon the health, safety, and well-being of Dana and persons exposed to it.

3260.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to timely test the Harper home for TCE, TCA, PCE, DCE, and DCA;

   b.   Failed to alert and advise residents, including the Harpers, that VOCs, including TCE, TCA, PCA, DCE, and DCA had entered the ground water;

278

     c.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

     d.   Failed to timely and properly implement an effective remediation plan for the soil, ground water and vapors associated with TCE, TCA, PCE, DCE, and DCA;

     e.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

     f.   Failed to timely and properly protect residents, including the Harpers, from the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3261.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

3262.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

3263.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

3264.   As a direct and proximate cause of the Defendants' acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

279

3265.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XXXIX – NEGLIGENCE
### *Dana Harper v. Nortek Global HVAC, LLC*

3266.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 76; 80 through 95; above as fully stated herein.

3267.   On and before 1988, Aubrey Manufacturing leached TCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3268.   On and before 1988, Aubrey Manufacturing leached DCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3269.   On and before 1988, Aubrey Manufacturing leached DCA into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3270.   As of August 27, 1988, Aubrey Manufacturing leached TCE into the Rail Road Creek in Union, Illinois.

3271.   As of August 27, 1988, Aubrey Manufacturing leached DCE into the Rail Road Creek in Union, Illinois.

3272.   As of August 27, 1988, Aubrey Manufacturing leached DCA into the Rail Road Creek in Union, Illinois.

280

3273.   Upon information and belief, on or around 1998, Nortek Global HVAC, LLC, acquired an ownership interest in the land at 6709 South Main Street in Union, Illinois

3274.   At all times relevant, it was the duty of the Defendant, Nortek Global HVAC, LLC, LLC, owed a duty of ordinary care to Dana Harper.

3275.   The Defendant committed one or more of the following acts and/or omissions:

a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

b.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

c.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

e.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3276.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

3277.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

3278.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for

281

such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

3279.  As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3280.  That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XL – NEGLIGENCE
### *Dana Harper v. Broan-NuTone, LLC*

3281.  Plaintiff, Dana Harper re-alleges and incorporates paragraphs 77; 80 through 95; above as fully stated herein.

3282.  On and before 1988, Aubrey Manufacturing leached TCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3283.  On and before 1988, Aubrey Manufacturing leached DCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3284.  On and before 1988, Aubrey Manufacturing leached DCA into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

282

3285.   As of August 27, 1988, Aubrey Manufacturing leached TCE into the Rail Road Creek in Union, Illinois.

3286.   As of August 27, 1988, Aubrey Manufacturing leached DCE into the Rail Road Creek in Union, Illinois.

3287.   As of August 27, 1988, Aubrey Manufacturing leached DCA into the Rail Road Creek in Union, Illinois.

3288.   Upon information and belief, on or around 2000, Broan-NuTone, LLC, acquired an ownership interest in the land at 6709 South Main Street in Union, Illinois.

3289.   At all times relevant, it was the duty of the Defendant, Broan-NuTone, LLC, owed a duty of ordinary care to Dana Harper.

3290.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

   b.   Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   c.   Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

   e.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3291.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

283

3292.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

3293.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

3294.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3295.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

## <u>COUNT XLI – NEGLIGENCE</u>
### *Dana Harper v. Rangaire Manufacturing Company, LP*

3296.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 78; 80 through 95; above as fully stated herein.

284

3297. On and before 1988, Aubrey Manufacturing leached TCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3298. On and before 1988, Aubrey Manufacturing leached DCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3299. On and before 1988, Aubrey Manufacturing leached DCA into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3300. As of August 27, 1988, Aubrey Manufacturing leached TCE into the Rail Road Creek in Union, Illinois.

3301. As of August 27, 1988, Aubrey Manufacturing leached DCE into the Rail Road Creek in Union, Illinois.

3302. As of August 27, 1988, Aubrey Manufacturing leached DCA into the Rail Road Creek in Union, Illinois.

3303. Upon information and belief, on or around 2000, Rangaire Manufacturing Company, LP, acquired an ownership interest in the land at 6709 South Main Street in Union, Illinois.

3304. At all times relevant, it was the duty of the Defendant, Rangaire Manufacturing Company, LP, owed a duty of ordinary care to Dana Harper.

3305. The Defendant committed one or more of the following acts and/or omissions:

    a. Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

    b. Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    c. Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    d. Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

285

        e.   Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3306.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

3307.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

3308.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

3309.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3310.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

286

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XLII – NEGLIGENCE
#### Dana Harper v. Melrose Industries PLC

3311.   Plaintiff, Dana Harper re-alleges and incorporates paragraphs 79 through 95; above as fully stated herein.

3312.   On and before 1988, Aubrey Manufacturing leached TCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3313.   On and before 1988, Aubrey Manufacturing leached DCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3314.   On and before 1988, Aubrey Manufacturing leached DCA into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3315.   As of August 27, 1988, Aubrey Manufacturing leached TCE into the Rail Road Creek in Union, Illinois.

3316.   As of August 27, 1988, Aubrey Manufacturing leached DCE into the Rail Road Creek in Union, Illinois.

3317.   As of August 27, 1988, Aubrey Manufacturing leached DCA into the Rail Road Creek in Union, Illinois.

3318.   Upon information and belief, on or around 2000, Melrose Industries PLC, acquired an ownership interest in the land at 6709 South Main Street in Union, Illinois.

3319.   At all times relevant, it was the duty of the Defendant, Melrose Industries PLC, owed a duty of ordinary care to Dana Harper.

3320.   The Defendant committed one or more of the following acts and/or omissions:

a. Failed to test the Harper home for TCE, TCA, PCE, DCE, and DCA;

b. Failed to alert and advise residents, including the Harpers, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

c. Failed to timely and properly warn residents, including the Harpers, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

d. Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

e. Failed to timely and properly protect residents, including the Harpers, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3321. As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Harper residence.

3322. As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Harper Residence and Union Illinois, collectively.

3323. As a direct and proximate cause of the Defendants' negligent acts and omissions, Dana Harper's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Stage IV Mantle Cell Lymphoma, a type of Non-Hodgkin Lymphoma.

3324. As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Dana Harper and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

288

3325.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Dana Harper, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Dana Harper, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Harper for her losses, which substantially exceed the minimum jurisdictional amount.

Respectfully Submitted,
ROMANUCCI & BLANDIN, LLC

By: /s/   Stephan D. Blandin
            Attorney for Plaintiff

Stephan D. Blandin
Michael R. Grieco
Elise M. Blandin
**ROMANUCCI & BLANDIN**
321 N. Clark St. Ste. 900,
Chicago IL 60654
Email: mgrieco@rblaw.net
*Telephone*: 312-458-1000 / *facsimile*: 312-458-1004
ARDC No. 6328501

289

** FILED **  Env: 13796676
McHenry County, Illinois
21LA000162
Date: 6/23/2021 2:55 PM
Katherine M. Keefe
Clerk of the Circuit Court

## IN THE CIRCUIT COURT OF THE 22nd JUDICIAL CIRCUIT
## McHENRY DEPARTMENT, LAW DIVISION

DANA HARPER

      Plaintiff,

    v.

CENTRAL WIRE INDUSTRIES LTD; CWI
HOLDING INC.; LINCOLN ELECTRIC
HOLDINGS, INC.; USI HOLDING, INC.;
ARCELORMITTAL INTERNATIONAL
AMERICA, LLC; ARCELORMITTAL USA
FOUNDATION INC.; CLEVELAND-CLIFFS
STEEL, LLC; GERRY ROUP; HENRY
LOPES; RICHARD PERLICK; RICHARD
GUSTAFSON; MIKE GRUNTHANER;
DAVID PLECNER; VICTOR POLARD;
CARL REED; TERRY TAMINAUSKSAS;
TOM HANEWALD; THIERY CREMAILH;
GUNNAR K. GILBERG; JEAN-CLAUDE
COUASNON; JACK ZUHARICH; VIKING
CHEMICAL COMPANY; WESTON
SOLUTIONS, INC.; MATRIX
ENVIRONMENTAL, INCORPORDATED;
AUTMNWOOD ESH CONSULTANTS,
LLC; ANTEA USA, INC.; JOHN W.
THORSEN; NORTEK GLOBAL HVAC,
LLC; BROAN-NUTONE, LLC; RANGAIRE
MANUFACTURING COMPANY, LP; and
MELROSE INDUSTRIES PLC,

      Defendants.

Case No.:       21LA000162

**PLAINTIFF DEMANDS A JURY
TRIAL**

## JURY DEMAND

    The undersigned demands a jury trial.

                Respectfully Submitted,
                ROMANUCCI & BLANDIN, LLC

By: /s/   Stephan D. Blandin   _____
Attorney for Plaintiff

Stephan D. Blandin
Michael R. Grieco
Elise M. Blandin
**ROMANUCCI & BLANDIN**
321 N. Clark St. Ste. 900,
Chicago IL 60654
Email: mgrieco@rblaw.net
*Telephone*: 312-458-1000 / *facsimile*: 312-458-1004
ARDC No. 6328501

** FILED **  Env: 13796676
McHenry County, Illinois
21LA000162
Date: 6/23/2021 2:55 PM
Katherine M. Keefe
Clerk of the Circuit Court

## IN THE CIRCUIT COURT OF THE 22nd JUDICIAL CIRCUIT
## McHENRY DEPARTMENT, LAW DIVISION

DANA HARPER

      Plaintiff,

    v.

CENTRAL WIRE INDUSTRIES LTD; CWI
HOLDING INC.; LINCOLN ELECTRIC
HOLDINGS, INC.; USI HOLDING, INC.;
ARCELORMITTAL INTERNATIONAL
AMERICA, LLC; ARCELORMITTAL USA
FOUNDATION INC.; CLEVELAND-CLIFFS
STEEL, LLC; GERRY ROUP; HENRY
LOPES; RICHARD PERLICK; RICHARD
GUSTAFSON; MIKE GRUNTHANER;
DAVID PLECNER; VICTOR POLARD;
CARL REED; TERRY TAMINAUSKSAS;
TOM HANEWALD; THIERY CREMAILH;
GUNNAR K. GILBERG; JEAN-CLAUDE
COUASNON; JACK ZUHARICH; VIKING
CHEMICAL COMPANY; WESTON
SOLUTIONS, INC.; MATRIX
ENVIRONMENTAL, INCORPORDATED;
AUTMNWOOD ESH CONSULTANTS,
LLC; ANTEA USA, INC.; JOHN W.
THORSEN; NORTEK GLOBAL HVAC,
LLC; BROAN-NUTONE, LLC; RANGAIRE
MANUFACTURING COMPANY, LP; and
MELROSE INDUSTRIES PLC,

      Defendants.

## 21LA000162

Case No.:
**PLAINTIFF DEMANDS A JURY
TRIAL**

### AFFIDAVIT REGARDING DAMAGES SOUGHT

Michael R. Grieco, being first duly sworn under oath, states as follows:

    1.    That your affiant is one of the attorneys of record for the parties in this matter.

    2.    That the total money damages sought in this civil action exceed $50,000.

1

FURTHER AFFIANT SAYETH NOT.

                                       Respectfully Submitted,
                                         ROMANUCCI & BLANDIN, LLC

                          By: /s/ Michael Grieco
                                    Attorney for Plaintiff

[X]     Under penalties as provided by law pursuant to 735 ILCS 5/1-109 (1993), I certify that the statements set forth herein are true and correct.

Stephan D. Blandin
Michael R. Grieco
ROMANUCCI & BLANDIN
321 N. Clark, Suite 900, Chicago, Illinois 60602
P: (312) 458-1000 / F: (312) 458 – 1004
Attorney No.: 6328501
sblandin@rblaw.net
mgrieco@rblaw.net